**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JUDGE SYLVIA JAMES,

    Plaintiff,

v.

HILLIARD HAMPTON, THE CITY OF INKSTER,
DAVID JONES, DEBORAH GREEN, PAMELA
ANDERSON, PAUL FISCHER, THE JUDICIAL
TENURE COMMISSION OF THE STATE OF
MICHIGAN, and VALDEMAR WASHINGTON.

    Defendants.
_____/

Case No. 12-10273

Hon. Lawrence P. Zatkoff

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on January 22, 2012.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiff's Verified Complaint and a "Motion for Temporary Restraining Order" ("Motion") [dkts 1 & 2]. The facts and legal arguments are adequately set forth in the brief submitted. Therefore, finding that the determination of the issues will not be aided by oral argument, and pursuant to E.D. Mich. L. R. 7.1(f)(2), this Court has decided Plaintiff's Motion upon the brief submitted, without oral argument. After a thorough review of the Plaintiff's Motion and the respective brief, the Court DENIES Plaintiff's Motion for the reasons set forth below.

## II. BACKGROUND

Because the Motion comes before the Court on Plaintiff's Motion and Verified Complaint, and without any response from Defendants, the facts are presented below according to Plaintiff's pleadings. The allegations presented below are set forth in Plaintiff's pleadings, and although the Court assumes the allegations are true for purposes of deciding the Motion, no determination of the accuracy or truth of such allegations has been made.

Plaintiff Judge Sylvia James is a district court judge for the 22nd District Court in the City of Inkster. She has held that position for more than 23 years. Defendant David Jones, a local attorney, was hired by the Inskter City Council to represent the City in matters involving the district court. In early 2011, Defendant Jones filed a judicial tenure complaint against Plaintiff with the Judicial Tenure Commission of the State of Michigan ("Judicial Tenure Commission"), a named party in this action, regarding alleged financial improprieties on behalf of Plaintiff's official duties in the administration of the district court. After the alleged financial improprieties were published by the local media, the Michigan Supreme Court took an informal vote to remove Plaintiff from her position as Chief Judge of the district court. Plaintiff was placed on administrative leave and was required to leave her office at the district court.

In May of 2011, Plaintiff and her counsel met with Defendant Deborah Green, the Regional Administrator for the district court. Defendant Green was informed that a safe in Plaintiff's office at the district court contained personal documents. At some time after the meeting, the safe in her office was opened without Plaintiff's presence. At some point between May and June 14, 2011, Defendant Green then filed a complaint for judicial misconduct with Defendant Paul Fischer, the Examiner for the Judicial Tenure Commission, and the Judicial Tenure Commission. On June 14,

2011, Defendant Green and Defendant Valdemar Washington, a retired judge appointed to fill Plaintiff's vacancy at the district court, investigated Plaintiff's conduct. Court staff at the district court then read Plaintiff's personal documents and provided them to Defendant Fischer and the Judicial Tenure Commission. Ultimately, Defendant Fischer and the Judicial Tenure Commission authorized and filed "Requests for Investigation," a "28 day letter" and a complaint for judicial misconduct against Plaintiff.

In late December of 2011, the Judicial Tenure Commission, on order of the Michigan Supreme Court, expedited the administrative hearing on the complaint. Although the pleadings are unclear, Plaintiff apparently was provided the evidence against her on January 5, 2012, which includes over 2000 documents and a witness list of more than 30 witnesses. Plaintiff was not provided any information as to the witnesses' testimony. A hearing regarding the claims against Plaintiff was set to start on January 23, 2012. Plaintiff's counsel, not permitted access to the witnesses, requested an adjournment of the administrative hearing. The request was denied.

On January 10, 2012, at a pre-trial hearing, the official appointed to preside over the matter (the "Master") ruled that Plaintiff could not present federal constitutional claims during the administrative hearing. The Master permitted the personal documents obtained through a warrantless search of Plaintiff's office, and a safe contained therein, at the district court to be presented at the administrative hearing. The Master also granted a request to permit the media to film the hearing.

According to Plaintiff, if the administrative hearing set to begin on January 23, 2012, occurs, Plaintiff will be deprived of due process of the law in violation of the United States Constitution and the Michigan Constitution. Plaintiff also claims that evidence obtained through an illegal search will

3

be presented at the administrative hearing. Based on the Motion, Plaintiff seeks a temporary restraining order enjoining:

> (a) the administrative hearing set to be held before the Judicial Tenure Commission on January 23, 2012; and
>
> (b) Defendants from using or disclosing the content of Plaintiff's personal documents that were purportedly seized in violation of the Fourth Amendment right against unreasonable search and seizures.

### III. LEGAL STANDARD

A court is to consider the following four factors in determining whether a plaintiff is entitled to preliminary injunctive relief:

> (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits;
> (2) whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued;
> (3) whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and
> (4) whether the public interest would be served by the issuance of a preliminary injunction.

*Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *UASCO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982); *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). The standard for preliminary injunction is not a rigid and comprehensive test, and the four factors are to be balanced, not prerequisites that must be satisfied, but instead "these factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992).

## IV. ANALYSIS

**A. LIKELIHOOD OF SUCCESS ON THE MERITS**

**1. Unreasonable Search and Seizure under the Fourth Amendment**

Plaintiff claims the search and seizure of her "personal" records at her office, including records contained in a safe within the office, at the district court violate her Fourth Amendment against unreasonable search and seizure. Plaintiff only supports her claim with cites to law that set forth the general principles establishing Fourth Amendment unreasonable search and seizure law. While as a general matter, warrantless searches are per se unreasonable under the Fourth Amendment, there are a few specifically established exceptions to that general rule. The "special needs" of a public employer's workplace justify one such exception.

This exception was first recognized in *O'Connor v. Ortega*, 480 U.S. 709 (1987). A four justice plurality agreed that neither a warrant nor a probable cause requirement should apply to employer searches for "legitimate work-related, noninvestigatory intrusions as well as investigations of work-related misconduct." *Id.* at 725. Rather, the Supreme Court explained that the search should be judged by the standard of reasonableness under all the circumstances. *Id.* at 725–26. Under this standard, both the inception and the scope of the intrusion must be reasonable. *Id.* Likewise, Justice Scalia, in his concurring opinion, concluded that "the offices of government employees . . . are covered by Fourth Amendment protections as a general matter." *Id.* at 731. However, Justice Scalia further held that "government searches to retrieve work-related materials or to investigate violations of workplace rules" do not violate the Fourth Amendment to the extent that the "searches . . . are regarded as reasonable and normal in the private-employer context." *Id.* at 732.

Applying the rules set forth in *Ortega*, Plaintiff has failed to show that the district court staff's search of Plaintiff's workplace, and seizure of her personal records, was unreasonable under all of the circumstances. The search was conducted at Plaintiff's workplace to investigate alleged work-related misconduct on behalf of Plaintiff in her capacity as a judge of the court. And, the contents of the search were not sought to bring criminal charges against Plaintiff. Other courts have applied the reasonableness standard to warrantless searches by public employers and officials on their employees, finding the search and/or seizures constitutional. *See City of Ontario, Cal. v. Quon*, 130 S.Ct. 2619, 2632–33 (2010) (holding that the police department's warrantless search of a police officer's pager was reasonable because it was not excessive in scope and was motivated by a legitimate work-related purpose); *Am. Postal Workers Union v. United States Postal Serv.*, 671 F. Supp. 497, 501 (S.D. Ohio 1987) (holding that certain postal employees did not have a reasonable expectation of privacy in the contents of their lockers and denied them relief against a warrantless locker search conducted by postal inspectors on suspicion of drug use and drug trafficking problems); *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America v. Winters*, 278 F. Supp. 2d 880, 883 (W.D. Mich. 2003) (finding that the warrantless drug testing of public employees reasonable due to the public employer's work-related purpose); *see also Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (holding that a probation officer's warrantless search of a probationer's home was justified in light of the state's special needs in supervising individuals on probation); *New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985) (finding that searches by school officials of students on school grounds are assessed under the reasonableness clause of the Fourth Amendment, not its warrants clause, because school officials have an interest to "maintain[ ] security and order," which requires a certain degree of flexibility).

Therefore, Plaintiff has not established a strong probability of success on the merits as to her unreasonable search and seizure claim.

**2.      Sixth Amendment Right to Fair Trial**

Plaintiff maintains further disclosure of the contents of the personal documents seized by district court staff will violate her right to a fair trial in a criminal proceeding and an unbiased jury pool. Plaintiff's claim, however, is purely speculative. As Plaintiff readily admits in the brief supporting her Motion, there are no criminal proceedings currently pending at this time. Allegations that criminal proceedings are imminent are also lacking. As such, the Court finds Plaintiff's hypothetical question as to whether she would receive a fair trial and unbiased jury under the Sixth Amendment without merit.

**3.      State Law Claims**

Plaintiff also claims that her privacy rights to her personal documents are recognized by Michigan's common-law right to privacy. The Court, however, declines to assert jurisdiction over Plaintiff's state-law claim in her Motion and her remaining state-law claims asserted in her Verified Complaint.

While the Court has supplemental jurisdiction over state-law claims pursuant to 28 U.S.C. § 1367(a), the Court may decline to exercise supplemental jurisdiction if there are "compelling reasons for declining jurisdiction." *Id.* § 1367(c)(4). The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claim in this matter. The Court finds that Plaintiff's state-law claim raises novel and complex issues of state law that would be more appropriately adjudicated by the state court. *See id.* § 1367(c)(1). Furthermore, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims in her Complaint, including:

>   Count III to the extent that it seeks to allege state law violations under the Michigan Court Rules;
>
>   Count X, asserting a claim of repliven against certain named Defendants; and
>
>   Count XI to the extent that it asserts a claim of defamation under Michigan law against Defendant Hilliard Hampton.

### B.   IRREPARABLE INJURY

Even if a plaintiff has not established a strong probability of success on the merits, the Court may still issue a preliminary injunction if the plaintiff has "'show[n] serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued.'" *Gaston Drugs, Inc. v. Metro. Life Ins. Co.*, 823 F.2d 984, 988 n. 2 (6th Cir. 1987) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100 102–05 (6th Cir. 1982). The plaintiff's harm is irreparable if "it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *see Basicomputer Corp. v. Scott*, 973 F.2d 507, 511–12 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute.").

Plaintiff argues that she will suffer irreparable injury due to the continued violation of her Constitutional rights, and the loss of a fair trial and unbiased jury pool through further disclosure of the contents of her personal records. The Court first finds no immediate harm based on violation of Plaintiff's Fourth Amendment right against unreasonable search and seizure because, as the Court has determined, the Fourth Amendment's warrant requirement is inapplicable to the court staff's search of Plaintiff's office at the district court. With respect to Plaintiff's concern that further pretrial publicity will prejudice any criminal trial, as the Court previously noted, Plaintiff's concern is purely speculative. There are no allegations a criminal proceeding is imminent. As such, any


harm caused to Plaintiff from a criminal proceeding is not *immediate* and imminent at this time. Thus, this factor weighs in favor of denying Plaintiff's request for a temporary restraining order.

### C.   SUBSTANTIAL HARM TO OTHERS AND THE PUBLIC INTEREST

Plaintiff contends that, in granting the injunctive relief, substantial harm to others and the public does not exist because the government has no legitimate interest in violating the Constitution and the public always has an interest in preventing the violation of an individual's constitutional rights.  While this may be true, as the Court discussed when assessing the merits of Plaintiff's claims, Plaintiff is unlikely to succeed on showing a constitutional violation.  Furthermore, Defendants and the public have an interest in ensuring that judicial officers are abiding by the ethical standards established by the Michigan Supreme Court.  Here, the public has a strong interest in discovering whether Plaintiff was involved in financial improprieties in her capacity as a Chief Judge at the district court.  As such, this factor further weighs in favor denying Plaintiff's request for a temporary restraining order.

### V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's Motion for Temporary Restraining Order [dkt 2] is DENIED to the extent that it seeks a temporary restraining order.

IT IS FURTHER ORDERED that counsel for Plaintiff and Defendants shall appear at 526 Water Street, Port Huron, Michigan, on Tuesday, January 31, 2012, at 10:00 a.m. for a hearing on whether the Court shall issue a preliminary injunction granting Plaintiff's requested relief.

IT IS FURTHER ORDERED that Defendants shall file a response to Plaintiff's Motion that

specifically addresses whether the Court should issue a preliminary injunction granting Plaintiff's requested relief. Defendant must file its response no later than 5:00 p.m. on Thursday, January 26, 2012.

IT IS FURTHER ORDERED that, if Plaintiff desires to file a reply to Defendants' response, Plaintiff must file her reply no later than 3:00 p.m. on Friday, January 27, 2012.

IT IS FURTHER ORDERED that Plaintiff is to immediately provide a copy of this Opinion and Order to all named Defendants and specifically inform them of the above ordered dates.

IT IS FURTHER ORDERED that if Plaintiff chooses not to pursue her request for a preliminary injunction, Plaintiff's counsel must notify the Court immediately.

IT IS SO ORDERED.

    S/Lawrence P. Zatkoff
    LAWRENCE P. ZATKOFF
    UNITED STATES DISTRICT JUDGE

Dated: January 22, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 22, 2012.

    S/Marie E. Verlinde
    Case Manager
    (810) 984-3290