UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDGE SYLVIA JAMES,

    Plaintiff,

v.

HILLIARD HAMPTON, THE CITY OF INKSTER,
DAVID JONES, DEBORAH GREEN, PAMELA
ANDERSON, PAUL FISCHER, THE JUDICIAL
TENURE COMMISSION OF THE STATE OF
MICHIGAN, and VALDEMAR WASHINGTON.

    Defendants.
_____/

Case No. 12-10273

Hon. Lawrence P. Zatkoff

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on April 5, 2012.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants Judicial Tenure Commission of the State of Michigan, Paul Fischer, Deborah Green and Valdemar Washington's motion to dismiss pursuant to 12(b)(6), or alternatively, for summary judgment [dkt 25]. Plaintiff responded to the motion.[1] Defendants Judicial Tenure Commission of the State of Michigan, Paul Fischer, Deborah Green and Valdemar Washington (hereinafter "Defendants"), however, did not file a reply brief, and the time

---

[1] Plaintiff filed two responses [dkt 26 & 29]. The second response was filed to correct a filing error with the first response regarding the exhibits.

to do so has elapsed. E.D. Mich. L.R. 7.1(e)(1). The Court, therefore, finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs and the papers previously submitted by the parties. For the reasons set forth below, Defendants' motion to dismiss and/or summary judgment is GRANTED.

## II. BACKGROUND

**1.    FACTUAL BACKGROUND**

This cases arises from the JTC's investigation into alleged judicial misconduct of Plaintiff Judge Sylvia James in her capacity as the district court judge for the 22nd District Court in the City of Inkster. The JTC is a panel of nine individuals established under Article 6, Section 30 of the Michigan Constitution, and the JTC's operation is governed by the Michigan Court Rules. The JTC's purpose is to "preserve the integrity of the judicial system." Mich. Ct. R. 9.200. The JTC is subject to the oversight of the Michigan Supreme Court. Mich. Const. art 6, § 30; Mich. Ct. R. 9.200; Mich. Ct. R. 9.203. In carrying out this purpose, the JTC may hold hearings, investigate judicial misconduct, recommend discipline of judges to the Michigan Supreme Court, and publish administrative rules that govern its own operation. Mich. Ct. R. 9.200; Mich. Ct. R. 9.203. Any hearing conducted by the JTC must conform "as nearly as possible" to Michigan's rules of civil procedure and evidence, as used in the state circuit courts. Mich. Ct. R. 9.211.

The JTC's investigation of Plaintiff relates to her position as the district judge for more than 23 years. Defendant David Jones, an attorney, was hired by the Inskter City Council to represent the City of Inkster in matters involving the district court. On October 7, 2010, Defendant Jones sent

2

a letter to the 22nd District Court pursuant to the Freedom of Information Act ("FOIA"). Therein, he requested all documents regarding the period from July 1, 2005, to the present, that relate to the 22nd District Court's bank accounts and funds received based on its operations. Attorney Sharon McPhail, representing the 22nd District Court, responded to Defendant Jones' letter, explaining that the court was not subject to FOIA.

In early 2011, Defendant Jones filed a request for investigation with the JTC regarding alleged financial improprieties with respect to Plaintiff's administration of the 22nd District Court. The Michigan Supreme Court subsequently placed Plaintiff on administrative leave, with pay, and required her to leave her district court office. Plaintiff alleges she was provided less than three hours to gather her personal possessions and vacate the office.

In May 2011, Plaintiff and her counsel met with Defendant Deborah Green, the Regional Administrator for the district court. Defendant Green was informed that a safe in Plaintiff's district court office, which Plaintiff alleges she purchased with her own funds, contained personal documents. At some time after the meeting, the safe in Plaintiff's office was opened without her being present. According to Plaintiff, on June 14, 2011, Defendant Green and Defendant Valdemar Washington, a retired judge appointed to fill Plaintiff's vacancy at the district court, investigated Plaintiff's conduct. Plaintiff alleges that court staff then read Plaintiff's personal documents and provided them to the JTC. Ultimately, on October 26, 2011, the JTC authorized the filing of a formal complaint for judicial misconduct against Plaintiff, to which Defendant Paul Fischer, the Examiner for the JTC, would present the charges in the hearing.[2]

---

[2] The "Examiner" is selected by the JTC to present evidence at a hearing before the Master, the JTC, or the Michigan Supreme Court. Mich. Ct. R. 9.201(f).

In December 2011, the Michigan Supreme Court expedited the administrative hearing on the complaint and appointed a Master to preside over the hearing.[3] Although the pleadings are unclear, Plaintiff apparently was provided the evidence against her on January 5, 2012, which includes over 2000 documents and a list of more than 30 witnesses. Plaintiff allegedly was not provided any information as to the witnesses' testimony that would be presented at the hearing.

On January 17, 2012, at a pre-trial hearing, Plaintiff alleges that the Master ruled that Plaintiff could not present federal constitutional claims during the administrative hearing. According to Plaintiff, the Master ruled that the personal documents obtained through a warrantless search of Plaintiff's district court office, and the safe contained therein, may be presented as evidence at the administrative hearing. *Defendants dispute these allegations.* The Master also granted a request to permit the media to film the hearing.

Plaintiff further alleges that the Master's refusal to allow Plaintiff to present her federal constitutional claims occurred off-the-record during the administrative proceeding on January 27, 2012. Plaintiff points to the following colloquy that occurred between Plaintiff's counsel and the Master:

> The Master: You wanted to make a request to make a request.
>
> [Plaintiff's counsel]: I wanted to request the opportunity to make a record on the Federal Constitutional Issues, which in this proceeding thus far have not been addressed, and—
>
> The Master: We have talked about that at the bench.
>
> [Plaintiff's counsel]: We have talked about that at the bench, and my understanding is that you have declined to allow me to make that

---

[3] The "Master" is the judge appointed by the Michigan Supreme Court "at the commission's request to hold hearings on a complaint against a judge filed by the commission." Mich. Ct. R. 9.201(e).

> record.
>
> The Master: Yes, I have declined to allow you to make a record about that, but not to make the record that you requested to make.
>
> [Plaintiff's counsel]: Thank you, yes. And that we will end these proceedings on Monday at 1:00 and that—
>
> The Master: At this point, I'll make a further record on that.

Pl.'s Resp. to Def. Mot., dkt 29, Ex. 1, at 2.

**2. PROCEDURAL BACKGROUND**

In this case, Plaintiff filed a Verified Complaint and Motion for Temporary Restraining Order and request for preliminary injunction on January 20, 2012. On January 22, 2012, the Court denied Plaintiff's request for a temporary restraining order to enjoin a state administrative hearing involving Plaintiff and the Judicial Tenure Commission of the State of Michigan ("JTC"). In the same order denying Plaintiff's request for a temporary restraining order, the Court ordered that the parties appear for a hearing on Plaintiff's request for preliminary injunction, to be held on Tuesday, January 31, 2012, at 10:00 a.m. The Court further ordered the parties to file responsive pleadings as to whether Plaintiff's request for a preliminary injunction should be granted. Defendants' filed two responses, to which Plaintiff replied.[4]

On January 23, 2012, the state administrative hearing regarding Plaintiff commenced before the JTC. Because the Court understood that the administrative hearing was not completed before the date set to hear argument on Plaintiff's request for a preliminary injunction, the Court adjourned the hearing until a later date to be set by the Court.

---

[4] Defendants Hilliard Hampton, City of Inkster, David Jones, and Pamela Anderson filed a response concurring with the legal arguments raised in the response of Defendants Judicial Tenure Commission of the State of Michigan, Valdemar Washington, Paul Fischer, and Deborah Green.

According to Plaintiff's initial pleadings filed at approximately 4:15 p.m. on Friday, January 20, 2012, if the administrative hearing set to begin at 9:00 a.m. on Monday, January 23, 2012, was permitted to occur, Plaintiff would be deprived of her rights under the United States Constitution due to the violation of her Fourth, Fourteenth and Sixth Amendment rights.[5] Plaintiff asserted that evidence obtained through the illegal search of her safe and district court office would be presented at the administrative hearing. Plaintiff also claimed that she was being investigated based on her race as African-American. Plaintiff sought declaratory and injunctive relief:

(a) to stop the administrative hearing set to be held before the Master on January 23, 2012;

(b) to prevent Defendants from using or disclosing the content of Plaintiff's personal documents that were purportedly seized in violation of the Fourth and Fourteenth Amendments;

(c) to require Defendants to produce the evidence obtained through the alleged illegal search and seizure;

(d) to strike certain paragraphs in the JTC's complaint against Plaintiff; and

(e) to find that Plaintiff has been subjected to the administrative investigation due to her race as an African-American in violation of the United States Constitution and federal laws.

In the parties' responsive pleadings addressing Plaintiff's request for a preliminary injunction, Defendants contend that the Court should abstain from exercising its subject matter jurisdiction over this matter in its entirety, and alternatively, that Plaintiff fails to satisfy the preliminary injunction standard to warrant granting Plaintiff's request. In response, Plaintiff has addressed the abstention grounds raised by Defendant and why a preliminary injunction should

---

[5] As the Court previously indicated, this hearing commenced before the Master on January 23, 2012, as scheduled. It concluded approximately six weeks later.

issue.

On March 5, 2012, the parties made closing arguments in the administrative hearing. On March 13, 2012, Defendants filed the instant motion to dismiss and/or for summary judgment. Defendants raise the same legal arguments previously raised in their response to Plaintiff's motion for injunctive relief. The Court therefore will consider the parties' responses to Plaintiff's motion for injunctive relief, Defendants' instant motion and brief, and Plaintiff's response to Defendants' motion (collectively, "the parties' papers").

In reviewing the parties' papers, the Court no longer finds it necessary to hold a preliminary injunction hearing. After a thorough review of Plaintiff's Verified Complaint, the parties' papers, and other matters of record, the Court exercises its discretion to abstain from Plaintiff's action for the reasons set forth below.

### III. ANALYSIS

"Federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). A federal court, however, may abstain from exercising its jurisdiction in limited circumstances. *New Orleans Pub. Serv. Inc. v. Council of New Orleans* ("NOPSI"), 491 U.S. 350, 361–63 (1989). One such circumstance is based upon the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). Under *Younger*, a federal court must decline to interfere with pending state proceedings involving important state interests unless extraordinary circumstances are present. *Younger*, 401 U.S. at 44–45. "*Younger* abstention applies when the state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims." *Carroll v. City of Mount Clemens*, 139 F.3d 1072, 1074 (6th Cir. 1998); *see*

*also Hayse v. Wethington*, 110 F.3d 18, 20 (6th Cir. 1997).

**1.      THE JTC HEARING CONSTITUTES AN ONGOING STATE JUDICIAL PROCEEDING**

Under the first factor in *Younger*, the Court must determine whether the JTC hearing is an ongoing state proceeding. The United States Supreme Court expanded the application of *Younger* abstention to state administrative hearings that are "judicial in nature." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986). Whether the administrative hearing is "judicial in nature" will depend on the nature of the proceeding's "final act." *NOPSI*, 491 U.S. at 370–71 (citation omitted). In distinguishing a legislative proceeding from a judicial proceeding, the United States Supreme Court explained "a judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist." *Id.* at 370 (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908)).

Plaintiff does not address whether the JTC proceeding is "judicial in nature" and thus, a state judicial proceeding. Instead, Plaintiff argues that this action (i.e., the filing of her Verified Complaint and Motion for TRO) were filed before the JTC's hearing began on January 23, 2012. Therefore, Plaintiff concludes that no state proceeding had begun prior to this action.

The Court disagrees with Plaintiff, as the "JTC proceeding" cannot be so narrowly construed as to have commenced as of January 23, 2012—the first day of the JTC hearing. For instance, applying Plaintiff's logic to this case would mean that, while Plaintiff's Verified Complaint was filed on January 20, 2012, this case has not yet commenced because the Court has held no hearings. This logic is obviously false. Rather, the Court finds that the JTC proceeding began when the formal complaint, the basis for the January 23, 2012, hearing, was filed on October 26, 2011. *See O'Neil v. Coughlan*, 511 F.3d 638, 644 (6th Cir. 2008) (finding that the filing of a grievance regarding

alleged misconduct of a judge constituted the beginning of the administrative judicial proceedings). After the formal complaint was filed, the Michigan Supreme Court appointed the Master to oversee the hearing, and on January 17, 2012, the Master resolved pre-trial motions filed by the parties. Thus, the JTC proceeding began far in advance of the filing of Plaintiff's Verified Complaint in this case.

The Court further finds that the JTC proceeding is "judicial in nature" based on the United States Supreme Court and Sixth Circuit cases that have addressed similar disciplinary proceedings and found them to constitute state judicial proceedings. For example, the United States Supreme Court found the first factor of *Younger* satisfied where a lawyer challenged bar association disciplinary proceedings by filing First Amendment claims in federal court. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 427–29 (1982). Most notably, the Supreme Court held that the disciplinary proceedings were judicial in nature. *Id.* at 433–34.

Likewise, the Sixth Circuit addressed a case involving a judge who allegedly had violated judicial conduct cannons while campaigning for reelection. *O'Neil*, 511 F.3d at 640. Rather than following the procedures in the state investigation, the judge commenced a federal action asserting that the judicial conduct cannons were unconstitutional and sought injunctive relief to prevent enforcement of the cannons. *Id.* In finding *Younger* abstention appropriate, the Sixth Circuit held that the filing of the grievance started the state judicial proceeding. *Id.* at 643–44. *O'Neil* relied on the Sixth Circuit's decision in *Squire v. Coughlan*, 469 F.3d 551 (6th Cir. 2006). In *Squire*, the Sixth Circuit held that investigations of judicial misconduct by the Ohio Disciplinary Counsel, an individual approved by the Ohio Supreme Court, is judicial and satisfies the first factor of *Younger*. 469 F.3d at 555–56. *See also Feiger v. Thomas*, 74 F.3d 740, 744 (6th Cir 1996) (in assessing

9

whether to abstain pursuant to *Younger*, the court found that the state disciplinary proceedings against an attorney to enforce the state's rules of professional conduct was judicial in nature).

Applying that precedent to the case at hand, the Court concludes that the JTC proceeding fits within the rubric expressed by the Supreme Court and applied by the Sixth Circuit. *See NOPSI*, 491 U.S. at 370; *Middlesex*, 457 U.S. at 433–34; *O'Neil*, 511 F.3d at 643–44; *Squire*, 469 F.3d at 555–56; *Feiger*, 74 F.3d at 744. During the proceeding, the Master hears evidence and investigates the present and past facts. Based upon those facts, the Master applies the already existing rules under the Michigan Judicial Code of Conduct and the Michigan Court Rules. The Court therefore concludes that the investigation of Plaintiff constituted an on-going state judicial proceeding that was pending prior to the time Plaintiff filed her Verified Complaint.

**2.     THE JTC'S INVESTIGATION AND HEARING IMPLICATE IMPORTANT STATE INTERESTS**

The second factor analyzes whether an important state interest is implicated by the state proceeding. *Middlesex*, 457 U.S. at 432. While Plaintiff acknowledges that the State of Michigan has an important interest in the JTC proceeding, Plaintiff asserts that this interest is outweighed by any attempt to "oust" her from a position that she was elected to serve by the people of the State of Michigan.

The Court finds that the JTC proceeding clearly implicates important state interests. *See id.* at 434 ("The judiciary as well as the public is dependent upon professionally ethical conduct of attorneys and thus has a significant interest in assuring and maintaining high standards of conduct of attorneys engaged in practice."). Just as the people of the State of Michigan have an interest in the democratic process to elect judges, the people have a significant interest to ensure that once a judge is elected, that judge is impartial and does not abuse his or her judicial power. In order to

protect that interest, the state has a significant interest to maintain professional judicial conduct. The proceeding involving Plaintiff is for the purpose of ensuring that a judge has maintained the integrity of the judicial system by following the Michigan Court Rules and Michigan Judicial Code of Conduct. The enforcement of these principles bolsters the people's confidence in the state judiciary system and protects the people from a judge's abuse of judicial power. The importance of the state's interest is exemplified by the fact that a state constitutional provision established the JTC to regulate the conduct of individuals in the judiciary. Therefore, the Court concludes that the second *Younger* factor is satisfied.

**3.      AN ADEQUATE OPPORTUNITY EXISTS TO RAISE PLAINTIFF'S CONSTITUTIONAL CLAIMS**

Turning to the third factor, the Court must *not* assume that Plaintiff lacks an adequate opportunity to raise her constitutional claims. *Middlesex*, 457 U.S. at 432. Plaintiff bears the burden in showing "that state procedural law barred presentation of [her] claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14, (1987) (citation omitted).

Based on the exhibits attached to the parties' papers, the Court has had the opportunity to review numerous pleadings from the JTC proceeding, including:

(a)     the JTC's complaint filed against Plaintiff;

(b)     Plaintiff's answer and affirmative defenses to the JTC's complaint;

(c)     Plaintiff's brief in support of disqualifying the justices of the Michigan Supreme Court;

(d)     Plaintiff's response to the Petition for Interim Suspension;

(e)     Plaintiff's motion to exclude evidence;

(f)     Plaintiff's motion for an order referring the matter to the JTC with the Master's recommendation to dismiss due to the Examiner's prosecutorial misconduct, or alternatively, an order adjourning the matter until all evidence in possession of the

Examiner is produced to Plaintiff;

(g)   the transcript of January 17, 2012, hearing before the Master addressing pre-hearing matters;

(h)   the transcript of the January 27, 2012, hearing before the Master concerning Plaintiff's federal constitutional claims; and

(i)   the transcript testimony of Defendant Anderson, Carmilla Bourn, Defendant Green, Breana Purdy, Alice Taylor, and Nicol James before the Master, regarding the shredding of unidentified documents from Plaintiff's office.[6]

The Court finds that Plaintiff falls significantly short of satisfying her burden. In Plaintiff's Verified Complaint, she alleges that the Master *ruled* at the January 17, 2012, hearing that Plaintiff could not present federal constitutional claims during the administrative hearing. Plaintiff also directs the Court to the colloquy that occurred between Plaintiff's counsel and the Master on January 27, 2012, after the JTC proceeding had commenced.

After reviewing the numerous pre-hearing pleadings and the January 17, 2012, transcript, the Court cannot find any instance when Plaintiff specifically raised her Fourth Amendment unreasonable search and seizure claim, Sixth Amendment right to a fair trial, or federal equal protection claim. Likewise, the Court cannot find any instance where the Master made a ruling regarding Plaintiff's federal constitutional claims. The Court therefore concludes that: (a) Plaintiff never specifically raised her federal constitutional claims at the January 17, 2012, hearing, and (b) the Master never expressed an unwillingness to consider Plaintiff's federal constitutional claims at that hearing.

---

[6]With respect to the testimony given by the non-named defendants in this case, they are employees of the 22nd district court. Breana Purdy is a probation officer; Carmilla Bourn is a criminal traffic case supervisor, and Alice Taylor is a deputy court clerk. Nicol James' position with the 22nd district court is not identified.

12

The only evidence Plaintiff has produced to support her allegation is the colloquy that occurred between the Master and Plaintiff's counsel at the January 27, 2012, hearing:

> The Master: You wanted to make a request to make a request.
>
> [Plaintiff's counsel]: I wanted to request the opportunity to make a record on the Federal Constitutional Issues, which in this proceeding thus far have not been addressed, and—
>
> The Master: We have talked about that at the bench.
>
> [Plaintiff's counsel]: We have talked about that at the bench, and my understanding is that you have declined to allow me to make that record.
>
> The Master: Yes, I have declined to allow you to make a record about that, but not to make the record that you requested to make.
>
> [Plaintiff's counsel]: Thank you, yes. And that we will end these proceedings on Monday at 1:00 and that—
>
> The Master: At this point, I'll make a further record on that.

Pl.'s Resp. to Def. Mot., dkt 29, Ex. 1, at 2.

The colloquy fails to show that Plaintiff has been denied an adequate opportunity to raise her constitutional claims for several reasons. First, it is unclear from this colloquy whether Plaintiff was denied the opportunity to raise her constitutional claims. The Master only stated, "Yes, I have declined to allow you to make a record about that, but not to make the record that you requested to make." It is unclear from these statements what record Plaintiff was permitted to make, and there is no evidence of what occurred off-the-record.

Second, the Master's response, "I'll make a further record on that[,]" suggests that the Master intended to address an issue discussed off-the-record on a later day of the proceeding. Plaintiff, however, has not provided an excerpt of the transcript regarding this later day. Third, the colloquy

13

occurred four days after the start of the JTC proceeding. The JTC proceeding, however, lasted approximately six weeks. There is no evidence to suggest that Plaintiff was unable to raise her federal constitutional claims on a later day of the proceeding.

Fourth, assuming the colloquy between Plaintiff's counsel and the Master indicates the Master's denial of Plaintiff's opportunity to raise her federal constitutional claims (as Plaintiff contends), she appears to have raised the issue before the Master during this colloquy. If Plaintiff disagrees with the Master's ruling on her constitutional claims, the rules governing the proceeding before the Master make clear that Plaintiff will receive adequate review on this issue before the reviewing JTC and the Michigan Supreme Court. *See Middlesex*, 457 U.S. at 436 ("Whatever doubt, if any, that may have existed about respondent Hinds' ability to have constitutional challenges heard in the bar disciplinary hearings was laid to rest by the subsequent actions of the New Jersey Supreme Court" when that court *sua sponte* addressed the constitutional claims); *Dayton Christian Schools, Inc.*, 477 U.S. at 629 ("In any event, it is sufficient under *Middlesex, supra,* at 436, that constitutional claims may be raised in state court judicial review of the administrative proceeding.").

According to the rules that govern the proceeding, Plaintiff has had and will have ample opportunity to raise her constitutional claims and seek review of any decision regarding her claims. According to the Michigan Court Rules, the Master presiding over the JTC hearing must ensure it conforms "as nearly as possible" to Michigan's rules of civil procedure and evidence as used in the circuit courts. Mich. Ct. R. 9.211. After conclusion of the hearing, the Master must provide a written report to the JTC. Mich. Ct. R. 9.214. Plaintiff is then provided an opportunity to object to the Master's Report, and Plaintiff has an opportunity to argue her objections at a hearing before the JTC. Mich. Ct. R. 9.215; Mich. Ct. R. 9.216.

Once the JTC makes a decision and provides a recommendation to the Michigan Supreme Court, the Michigan Supreme Court then reviews the JTC's recommendation, along with any petition properly filed by Plaintiff raising issues regarding the recommendation. Mich. Ct. R. 9.224(A). The Michigan Supreme Court reviews the entire record of the proceeding and then files a written opinion "which may accept or reject the recommendations of the commission, or modify the recommendations." Mich. Ct. R. 9.225. Thus, the Court finds these proceedings adequate. As the Supreme Court and Sixth Circuit have stated, the Court is not permitted to presume that the JTC hearing is an inadequate forum in which Plaintiff can raise her constitutional claims. *Federal Express Corp. v. Tennessee Public Ser. Com.*, 925 F.2d 962, 970 (6th Cir. 1991) (citing *Pennzoil Co.*, 481 U.S. at 15).

Plaintiff further contends that her federal constitutional claims will not be subject to a full and fair hearing before the Master because of "the exculpatory evidence that was illegally seized from her and destroyed." Pl's resp. to Def. Mot., dkt 29, at 9. Plaintiff's argument is fatally flawed. The Court, similar to the proceeding before the Master, is unable to recreate and review evidence that has been destroyed. Furthermore, there is no evidence that any claims related to the exculpatory evidence will not be addressed in the JTC proceeding, either by the Master, the reviewing JTC, or the Michigan Supreme Court.

The Court therefore declines to find that Plaintiff's federal constitutional claims cannot be adequately addressed in the JTC proceeding. *See Nettles-Nickerson v. Fischer*, No. 07-cv-11886, 2008 WL 363212, at *4 (E.D. Mich. Feb. 11, 2008) (Borman, J.) (finding that a plaintiff failed to carry the burden in showing that federal constitutional claims could not be adequately addressed in a Michigan JTC proceeding). The Court further finds no state law or Michigan Court Rule that

prevents the Master or the Michigan Supreme Court from considering Plaintiff's federal constitutional claims. Accordingly, the third factor for *Younger* abstention is satisfied.

**4.     NO EXTRAORDINARY CIRCUMSTANCES PRESENT**

If all three factors under *Younger* are satisfied, a federal court should abstain "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Amer. Family Prepaid Legal Corp., v. Columbus Bar Ass'n*, 498 F.3d 328, 332 (6th Cir. 2007) (citation omitted). Having reviewed the record in this matter, the Court finds that Plaintiff has made no showing of bad faith, harassment, or some other extraordinary circumstance that would warrant the Court to exercise jurisdiction. *See NOPSI*, 491 U.S. at 365 ("[I]t is clear that the mere assertion of a substantial constitutional challenge to state action will not alone compel the exercise of federal jurisdiction.").

Accordingly, the Court finds that the polices underlying *Younger* abstention are present in this case. The Court must afford the State of Michigan due respect in its power to supervise its attorneys and judges.

**5.     *BURFORD* ABSTENTION**

While the Court relies on *Younger* abstention, the parties also address the applicability of *Burford* abstention to this case. The Court finds that the policies underpinning *Burford* abstention further support the Court's conclusion to abstain from exercising jurisdiction. According to the United States Supreme Court, *Burford* abstention is appropriate:

> [w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of

16

> the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*NOPSI*, 491 U.S. at 361 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)). *Burford* abstention is based on the principle to protect "complex state administrative processes from undue federal interference." *Id.* at 362.

Applying *Burford* abstention, the Court finds that exercise of federal review over Plaintiff's federal constitutional claims that can be timely and adequately reviewed in the JTC proceedings would be disruptive of the State of Michigan's efforts to establish a coherent policy to supervise and investigate the state judicial process. First, the Court concludes that the State of Michigan has established a complex state administrative process for the JTC's operation in its Constitution and numerous Michigan Court Rules. Second, the Court believes that federal review of this coherent policy would limit the State of Michigan's ability to maintain its supervisory powers over its judges. As such, the *Burford* abstention doctrine also supports the Court's conclusion to decline to exercise jurisdiction.

**6.    CONCLUSION**

For the reasons stated above, the Court shall abstain from exercising jurisdiction over this case. Moreover, because the Court declines to exercise its jurisdiction over Plaintiff's case, the Court shall not reach the additional arguments raised by the parties.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that the Court abstains from exercising jurisdiction over Plaintiff's claims and Plaintiff's case is DISMISSED.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: April 5, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on April 5, 2012.

S/Marie E. Verlinde
Case Manager
(810) 984-3290