# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JUDGE SYLVIA JAMES,

    Plaintiff,

v.

HILLIARD HAMPTON, THE CITY OF INKSTER,
DAVID JONES, DEBORAH GREEN, PAMELA
ANDERSON, PAUL FISCHER, THE JUDICIAL
TENURE COMMISSION OF THE STATE OF
MICHIGAN, and VALDEMAR WASHINGTON.

    Defendants.
_____/

Case No. 12-10273

Hon. Lawrence P. Zatkoff

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on December 27, 2013

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Defendants' Motions to Dismiss [dkt 43, 44]. Plaintiff filed responses to both motions. Defendants Hilliard Hampton, The City of Inkster, David Jones and Pamela Anderson filed a reply, but Defendants Judicial Tenure Commission, Paul Fischer, Deborah Green and Valdemar Washington did not. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted, without oral argument. For the following reasons, Defendants Hilliard Hampton, The City of Inkster, David Jones and Pamela Anderson's motion is GRANTED, Defendants

Judicial Tenure Commission, Paul Fischer, Deborah Green and Valdemar Washington's motion is DENIED,[1] and Plaintiffs' complaint is DISMISSED WITH PREJUDICE.

## II. BACKGROUND

### A. FACTUAL BACKGROUND

The facts of this case have been discussed at length in numerous orders and opinions. *See* Dkt. #'s 7, 32; *James v. Hampton*, 513 F. App'x 471 (6th Cir. 2013); *In re James*, 492 Mich. 553 (2012). Accordingly, the Court need not repeat them here.

### B. RELEVANT PROCEDURAL BACKGROUND

On April 5, 2012, this Court dismissed Plaintiff's complaint, holding that *Younger v. Harris*, 401 U.S. 37 (1971), abstention required it to refrain from ruling on Plaintiff's claims while the state proceedings remained ongoing.[2] *See* Dkt. # 32. Plaintiff appealed this Court's decision to the United States Court of Appeals for the Sixth Circuit.

The Sixth Circuit found all three conditions for *Younger* abstention—(1) ongoing state judicial proceedings; (2) important state interests; and (3) adequate opportunity to raise constitutional challenges—to be met and affirmed this Court's conclusion to abstain from reaching the merits of Plaintiff's complaint. Yet, the Sixth Circuit reversed this Court's dismissal as Plaintiff sought monetary damages in addition to equitable relief. The monetary demand, the Sixth Circuit stated, warranted a stay

---

[1] Defendants Judicial Tenure Commission, Paul Fischer, Deborah Green and Valdemar Washington and Defendants Hilliard Hampton, The City of Inkster, David Jones and Pamela Anderson filed motions to dismiss containing separate arguments. Both groups of Defendants did, however, concur to and incorporate by reference the arguments contained each group's brief. The Court finds the arguments offered by Defendants Judicial Tenure Commission, Paul Fischer, Deborah Green and Valdemar Washington unavailing and/or moot and denies its motion. The main argument offered by Defendants Hilliard Hampton, The City of Inkster, David Jones and Pamela Anderson for dismissal—failure to state a claim—is the basis for the Court's dismissal of Plaintiff's complaint. Yet, because Defendants Judicial Tenure Commission, Paul Fischer, Deborah Green and Valdemar Washington concurred to and incorporated that argument in their brief, the dismissal of Plaintiff's complaint applies with equal force to them.

[2] The Court also found that *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), abstention further supported its conclusion to abstain from exercising jurisdiction.

of the proceedings—instead of dismissal—to protect against the possibility that Plaintiff could be deprived of her opportunity to present the merits of her damages claims in state court:

> By abstaining, it avoided interfering with the state proceedings, assuming instead that the state would give James an opportunity to raise any federal claims. At the conclusion of the state proceedings, with the entirety of the state record in front of it, the district court can evaluate whether James was in fact foreclosed from raising her constitutional claims. It may also find grounds to dismiss the case, such as preclusion. But staying the case, instead of dismissing it, precludes any statute of limitations issues and avoids any difficulties of service.

*James*, 513 F. App'x at 477.

### III. LEGAL STANDARD

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a party's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that party's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the party pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *Id.* at 556. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000).

## IV. ANALYSIS

### A. PLAINTIFF'S STATE-LAW CLAIMS

As an initial matter, the Court briefly addresses the viability of Plaintiff's state-law claims contained in her complaint. On January 22, 2012, the Court declined to exercise supplemental jurisdiction over Plaintiff's "state-law claim in her [m]otion and her remaining state-law claims asserted in her Verified Complaint." *See* Dkt. # 7, p. 7–8. This denial of supplemental jurisdiction was neither appealed to nor addressed by the Sixth Circuit. Accordingly, the Court sees no justifiable reason to re-consider its previous order declining to exercise supplemental jurisdiction over Plaintiff's state-law claims and reaffirms the dismissal of Counts III, X, and XI as against all Defendants.

### B. PLAINTIFF'S FEDERAL CLAIMS

Though the majority of Plaintiff's complaint is inartfully pled, Plaintiff appears to assert two constitutional claims pursuant to 42 U.S.C. § 1983: a violation of the Fourth Amendment and a violation of the Fourteenth Amendment's Equal Protection clause. Defendants Judicial Tenure Commission ("JTC"), Paul Fischer, Deborah Green and Valdemar Washington ("State Defendants") and Defendants Hilliard Hampton, The City of Inkster, David Jones and Pamela Anderson ("Inkster Defendants") both filed motions to dismiss Plaintiff's complaint.

Defendants attack Plaintiff's complaint on three independent grounds: (1) the doctrine of res judicata bars Plaintiff's federal constitutional claims; (2) the Eleventh Amendment's sovereign immunity doctrine precludes this Court from exercising jurisdiction over Plaintiff's claims; and (3) Plaintiff's complaint fails to state a claim for relief under Fed. R. Civ. P. 12(b)(6).

#### i. *Res Judicata*

In Michigan, claim preclusion—or res judicata—has the following elements: (1) the first action must have resulted in a decision on the merits; (2) the issues must have been resolved in the first action,

either because they were actually litigated or because they might have been raised in the first action through reasonable diligence of the parties; and (3) both actions must be between the same parties, or their privies. *Sloan v. City of Madison Heights*, 425 Mich. 288, 295 (1986). The burden of proving the applicability of the doctrine of res judicata is upon the party asserting it. *E & G Finance Co. v. Simms*, 362 Mich. 592, 597 (1961).

As Plaintiff would have it, the lack of a final decision by the Michigan Supreme Court on her constitutional claims bars application of res judicata. Yet, Plaintiff's theory is misplaced for two reasons. First, Plaintiff appears to conflate and blur the doctrines of claim preclusion (res judicata) and issue preclusion (collateral estoppel). The latter refers to the effect of a judgment in foreclosing relitigation of a matter that *has been litigated and decided*, while the former refers to the preclusive effect of a judgment in foreclosing relitigation of matters that *should have been raised* in an earlier suit. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Thus, for res judicata to apply the Michigan Supreme Court did not necessarily have to reach a final adjudication on Plaintiff's federal claims—rather, re judicata might prevent relitigation here if such issues "should have been raised" in the state proceedings.

Second, Defendants are not arguing that a "final adjudication" or "decision on the merits" was reached on those claims during the state proceedings. Quite oppositely, Defendants instead posit that, because Plaintiff had *ample opportunities* to raise her constitutional claims during the state proceedings, she is effectively foreclosed from now raising them in this Court under res judicata—not collateral estoppel.[3] *See Pierson Sand and Gravel, Inc. v. Keeler Brass Co.*, 460 Mich. 372, 380 (1999) ("[T]he

---

[3] Nothing in the state disciplinary proceedings lends credence to Plaintiff's argument that she was prohibited from raising her constitutional claims. Plaintiff's sole reliance on her attorney's January 27, 2012, colloquy with the Master to support her argument that she could not raise any constitutional claims throughout the entirety of the state proceedings has not only been rejected by this Court, but also by the Sixth Circuit. *See James*, 513 F. App'x at 476. Nevertheless, because the Court finds that the same parties or privies were not present in both the state and federal actions, the Court will not conclusively determine whether prong one or two of res judicata was satisfied. *See Sloan*, 425 Mich. at 295.

5

doctrine of res judicata applies, except in special cases, in a subsequent action between the same parties and not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time." (citations omitted)).

Nevertheless, the Court is not convinced the third prong—same parties or privies in both actions—is satisfied. Michigan courts do not demand strict identity of parties. *See, e.g.*, *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 12–13 (2003) ("The parties to the second action need be only substantially identical to the parties in the first action, in that the rule applies to both parties and their privies . . . . [A] privy includes a person so identified in interest with another that he represents the same legal right, such as a principal to an agent, a master to a servant, or an indemnitor to an indemnitee."). Instead, this prong requires that "both actions involve the same parties or their privies." *Estes v. Titus*, 481 Mich. 573, 585 (2008). Put another way, "Michigan courts require 'a substantial identity of interests and a working functional relationship in which the interests of the nonparty are presented and protected by the party in the litigation.'" *McCoy v. Michigan*, 369 F. App'x 646, 650 (6th Cir. 2010) (quoting *Adair v. Michigan*, 470 Mich. 105, 121 (2004)).

In the underlying state proceedings, Defendant JTC was the agency that filed the petition against Plaintiff. Defendant Fischer is the Executive Director of the JTC and served as examiner during Plaintiff's formal proceedings. Defendants Green and Washington are allegedly employees of Michigan's State Court Administrative Office ("SCAO"), and both were testifying witnesses during the hearing before the Master. The State Defendants thus theorize (1) that JTC and Fischer were parties to the state proceedings and (2) that the SCAO (where Defendants Green and Washington are allegedly employed) is considered a privy to the JTC (an alleged "party") because they have the "same interests in enforcing the Code of Judicial Conduct." The Court finds the State Defendants' position flawed.

First, while Defendant JTC was the authoritative agency charged with prosecuting Plaintiff's judicial misconduct proceedings, it was not a named party in those proceedings. Accordingly, Defendant JTC—or any of the State Defendants for that matter—can only invoke res judicata if privity exists between itself and a named party or parties to the disciplinary proceedings. None of the State Defendants can satisfy that burden, however, as the only *named* party to the state proceedings was Plaintiff. And, quite obviously, the State Defendants are not arguing that they are in privity with Plaintiff.

Further, even were the Court to find that Defendants JTC and Fischer were "parties" to the state action, the Court is not convinced that the JTC and SCAO (which allegedly employs Defendants Green and Washington) possess the "same interests" such that privity would exist between the JTC and SCAO (*i.e.*, Green and Washington). The JTC is empowered to promote the integrity of the judicial process and strives to hold state judges accountable for their misconduct. On the other hand, the SCAO is the administrative agency of the Michigan Supreme Court and is charged with providing services so that Michigan trial courts can operate effectively. Examples of such services include collecting data on courts' caseloads and providing technological assistance. Thus, the State Defendants' conclusory statement that these two agencies have the "same interests" in protecting judicial misconduct misses the mark.

In sum, the Court finds that neither the State Defendants nor the Inkster Defendants[4] can utilize res judicata as a shield against Plaintiff's constitutional claims.

**ii. Failure to State a Claim**

The Court next addresses whether the remaining claims in Plaintiff's complaint (Counts I, II, and IV) satisfy the pleading standards set forth in Fed. R. Civ. P. 12(b)(6). Even accepting all of her factual allegations as true, Plaintiff's complaint must be dismissed for failure to state a claim.

---

[4] The Inkster Defendants have offered no argument as to how res judicata protection would apply to them, and therefore the Court's analysis on this issue also applies with equal force to this group of Defendants.

**a. Fourth Amendment claim**

Plaintiff claims that a violation of her Fourth Amendment rights occurred when her office and safe—containing "personal" records—were searched by Defendants without her consent or a warrant. Because she had a "reasonable expectation of privacy" as to the contents in her office, Plaintiff posits that Defendants could only conduct the search upon a "showing of probable cause and the issuance of a search warrant." Defendants dispute that a warrant was required, arguing that the "special needs" exception established in *O'Connor v. Ortega*, 480 U.S. 709 (1987), displaces such a requirement. The Court agrees.

While as a general matter, warrantless searches are per se unreasonable under the Fourth Amendment, there are a few specifically established exceptions to that general rule. The "special needs" of a public employer's workplace justify one such exception. In *O'Connor*, a four justice plurality agreed that neither a warrant nor a probable cause requirement should apply to employer searches for "legitimate work-related, noninvestigatory intrusions as well as investigations of work-related misconduct." *Id.* at 725. Rather, the Supreme Court explained that the search should be judged by the standard of reasonableness under all the circumstances. *Id.* at 725–26. Under this standard, both the inception and the scope of the intrusion must be reasonable. *Id.* A search of an employee's workplace by an employer is "justified at its inception" when "there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct." *Id.* at 726. A search is reasonable in scope when it is "reasonably related to the objectives of the search and not excessively intrusive in light of . . . the nature of the [misconduct]." *Id.* (citing *N.J. v. T.L.O.*, 469 U.S. 325, 342 (1985)).

Applying the rules set forth in *O'Connor*, Plaintiff's complaint fails to show that the search of her workplace and seizure of her personal records was unreasonable under all of the circumstances. Notably, Plaintiff's complaint is devoid of any allegations alleging how or why the search was unreasonable in

terms of inception and scope. Instead, the crux of her allegations surrounding her Fourth Amendment claim focus on the erroneously belief that probable cause and a warrant were required for the search to take place. *See* Dkt. # 1, p. 12, ¶ 46 ("If, as . . . Defendant Fischer has said, he had reason to believe that the contents of the Plaintiff's office contained proof of judicial misconduct . . . , he was required to obtain a warrant to search the office and to open her personal safe . . . ."). But, as explained above, workplace searches are judged by the standard of reasonableness under all the circumstances. And as mentioned on numerous occasions by this Court, the Sixth Circuit, and the Michigan Supreme Court, at the time of the search Plaintiff was under investigation for allegedly committing numerous judicial improprieties—allegations ultimately found to have credence by the Michigan Supreme Court on July 31, 2012, and which resulted in removal of Plaintiff from office. In brief, nothing before the Court in the pleadings suggests that Defendants' search of Plaintiff's workplace and seizure of documents was not justified at its inception or unreasonable in its scope. Accordingly, to the extent that Plaintiff asserts a Fourth Amendment claim against all Defendants in Counts I and II, these Counts must be dismissed.

### b. Equal Protection claim

Plaintiff next argues that Defendants JTC and Fischer violated the Equal Protection Clause by disproportionately pursuing disciplinary action against African American members of the Michigan judiciary. Plaintiff's complaint highlights three examples involving Caucasian judges where Defendant JTC allegedly declined to pursue formal complaints against those judges after they were investigated for improper conduct. *See* Dkt. # 1, ¶¶ 56–58. In similar vein, however, Plaintiff's complaint fails to state a colorable Equal Protection violation.

"The Equal Protection Clause prohibits a state from denying to any person within its jurisdiction the equal protection of the laws." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006) (internal quotation marks omitted). "The threshold element of an [E]qual [P]rotection claim is

disparate treatment; once disparate treatment is shown, the [E]qual [P]rotection analysis to be applied is determined by the classification used by government decision-makers." *Id.* "[A] plaintiff asserting a Fourteenth Amendment [E]qual [P]rotection claim under 42 U.S.C. § 1983 must prove the same elements required to establish a disparate treatment claim under Title VII . . . ." *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (citing *Gutzwiller v. Fenik*, 860 F.2d 1317, 1324 (6th Cir. 1988)).

Because Plaintiff has brought her Equal Protection claim pursuant to section 1983, one of the *prima facie* elements she must establish is that those judges she claims were treated differently were "similarly-situated" and engaged in similar conduct. *Id.* (citations omitted). Thus, in order for Plaintiff to state a plausible claim, she must demonstrate that she and the "similarly-situated" non-African American state judges engaged in the same—or at least relevantly similar—conduct, but they (*i.e.*, the non-African American state judges) were disparately or more leniently disciplined. *Id.* (quoting *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992)).

Despite the fact that Plaintiff's complaint is not a model of clarity, the Court is able to discern the following examples from her complaint which allegedly illustrate that Plaintiff was "disproportionately" disciplined by Defendant JTC and Fischer:

(1) In the matter of Judge David Stowe: Plaintiff states that while Judge Stowe was deciding child custody matters in a female's divorce case, he commenced a personal relationship with that female. When a court administrator became apprised of the situation, he complained to county officials and he was ultimately fired by Judge Stowe. When the court administrator threatened a whistleblower lawsuit, Judge Stowe—with the approval of city officials—paid the administrator nearly $69,000.00 to settle the potential suit.

10

(2) In the matter of Judge Mark Somers: Plaintiff states that Judge Somers interjected his personal religious beliefs into judicial proceedings and, after a court employee complained, Judge Somers fired that employee. That employee then filed a civil suit against Judge Somers in this District alleging, among other things, that she was terminated based on her unmarried, personal relationship with another state court judge and her complaints of Judge Somers' use of religious rhetoric from the bench. The federal district court entered judgment against Judge Somers in the amount of $1,173,125.30 following a jury trial.

(3) In the matter of Judge James Kandrevas: Plaintiff states that a former court employee was fired by Judge Kandrevas after raising concerns that the judge was comingling funds and making false representations to obtain state and federal grants. The court employee filed a civil suit against Judge Kandrevas, which was ultimately settled with authority from the City of Southgate.

Here, Plaintiff's allegations fall considerably short in alleging any type of "similar" conduct. In Plaintiff's underlying state disciplinary proceedings, the JTC's complaint alleged four counts of judicial misconduct, all of which was corroborated by a preponderance of the evidence during the proceedings: (1) Plaintiff misappropriated public funds on myriad occasions; (2) Plaintiff denied citizens access to the court by instituting and enforcing an improper business-attire policy; (3) Plaintiff employed a family member in violation of the Michigan Supreme Court's anti-nepotism policy; and (4) Plaintiff made misrepresentations during the investigation by the JTC and during the hearing, including lying under oath. The examples of cases Plaintiff's provides in her complaint in which the JTC declined to file formal complaints fail to demonstrate the existence of any disproportionality, as Plaintiff claims. Those cases, despite involving Caucasian judges, are clearly distinguishable on their face as none of them involved

11

circumstances that were of "comparable seriousness" to the conduct for which Plaintiff was ultimately removed from the bench. *Mitchell*, 964 F.2d at 583 (citations omitted).

Moreover, the only matter bearing any resemblance to the instant case is the scenario involving Judge Kandrevas, and yet Plaintiff offers scant details of Judge Kandrevas' alleged misconduct, such as how much money was commingled, the period of time in which funds were commingled, or whether he made misrepresentations during the course of being investigated or under oath. In other words, the Court finds the alleged judicial misconduct at issue in those cases too attenuated—or too *dis*similar—for Plaintiff to draw any type of analogous comparison to the instant matter. The scope and breadth of Plaintiff's continued transgressions—and not Defendants JTC and Fischer's alleged racial convictions—caused the JTC to file a formal complaint against her after a scrupulous investigation. In the end, Plaintiff's complaint fails to plead facts of similarly-situated individuals who engaged in similar conduct as Plaintiff, but were disparately disciplined. Therefore Plaintiff's Equal Protection claim against Defendants JTC and Fischer must be dismissed.[5]

---

[5] The State Defendants' motion also advances an Eleventh Amendment sovereign immunity argument. Because the Court finds that Plaintiff's complaint must be dismissed for failure to state a claim, the Court need not address that argument.

## V. CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that Defendants Hilliard Hampton, The City of Inkster, David Jones and Pamela Anderson's Motion to Dismiss [dkt 43] is GRANTED.

IT IS FURTHER ORDERED that Defendants Judicial Tenure Commission, Paul Fischer, Deborah Green and Valdemar Washington's Motion to Dismiss [dkt 44] is DENIED.[6]

IT IS FURTHER ORDERED that Plaintiff's complaint [dkt 1] is DISMISSED WITH PREJUDICE as against all Defendants.

IT IS SO ORDERED.

Date: December 27, 2013

s/Lawrence P. Zatkoff
Hon. Lawrence P. Zatkoff
U.S. District Judge

---

[6] *See supra*, note 1.