UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYLVIA JAMES,

               Plaintiff,                                  Case No. 12-10273

                                                   Paul D. Borman
                                                   United States District Judge

v.

HILLIARD HAMPTON, an individual
and as Mayor of the City Inkster,
the CITY OF INKSTER, DAVID JONES,
an individual, PAMELA ANDERSON, an
individual, DEBORAH GREEN, an
individual, PAUL FISCHER, an individual
and Executive Director of the Judicial Tenure
Commission, the JUDICIAL TENURE
COMMISSION, and VALDEMAR
WASHINGTON, an individual,

               Defendants.
_____/


OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
THE INKSTER DEFENDANTS' MOTION TO DISMISS (ECF NO. 60)

     Before the Court is Defendants Mayor Hilliard Hampton ("Hampton"), the City of Inkster,

David Jones ("Jones") and Pamela Anderson's ("Anderson") (collectively "the Inkster Defendants")

Motion to Dismiss. (ECF No. 60.) Plaintiff filed a Response (ECF No. 62) and the Inkster

Defendants filed a Reply (ECF No. 64). The Court held a hearing on June 26, 2015. For the reasons

that follow, the Court GRANTS IN PART AND DENIES IN PART the Motion to Dismiss.

**INTRODUCTION**

This case, recently reassigned to this Court from the Honorable Lawrence P. Zatkoff by Administrative Order, is before the Court on remand from the Sixth Circuit to consider the claims of Judge Sylvia James, an African-American former state court judge, that Defendants violated her Fourth and Fourteenth Amendment rights when they conducted a search of her office and personal safe and ultimately dismissed her from office based upon alleged improprieties related to her position as a judge of the 22nd District Court of the State of Michigan. Presently before the Court is the motion of the Inkster Defendants to dismiss for failure to state a claim.[1] For the reasons that follow, the Court GRANTS the motion to dismiss as to Defendants Hampton, Jones and the City of Inkster and DENIES the motion to dismiss as to Defendant Anderson.

**I. BACKGROUND**

**A. The Allegations of Plaintiff's Complaint**

The allegations of Plaintiff's Complaint, which the Court must accept as true for purposes of this motion to dismiss for failure to state a claim, as relevant here, establish the following facts. Plaintiff Sylvia James, an African-American woman, was a district judge for the 22nd District Court of Michigan for 23 years. Compl. ¶ 7. Defendants are: the City of Inkster; Hampton, the mayor of the City of Inkster; Jones, a private attorney who was doing business for the City of Inkster at the time of the events that are the subject of Plaintiff's Complaint; Anderson, the Court Administrator for the 22nd District Court; Deborah Green ("Green"), the Regional Administrator for the Supreme Court Administrators Office ("SCAO") for the State of Michigan; Paul Fischer ("Fischer"), an

---

[1] The remaining Defendants, Deborah Green, Paul Fischer, the Judicial Tenure Commission and Valdemar Washington (collectively "the State Defendants") have not moved to dismiss following remand and answered Plaintiff's Complaint on March 13, 2013. (ECF No. 41.)

Examiner for the Judicial Tenure Commission; and the Judicial Tenure Commission ("JTC"), an authorized body established under Michigan law to investigate and recommend action against judicial officers of the State of Michigan and Valdemar Washington ("Washington"). Compl. ¶¶ 8-14.

Plaintiff alleges that Hampton falsely accused her of financial improprieties in the administration of the 22nd District Court in an attempt to create negative publicity which would lead to her removal from office. Over a period of years, Plaintiff successfully challenged Hampton's efforts to change the City of Inkster Charter to a "strong mayor" form of government, which led to Hampton's public attacks on the Plaintiff. *Id.* ¶¶ 16-17. In 2010, the City of Inkster hired an attorney, Defendant Jones, to represent the City in matters involving the 22nd District Court. At that time, Plaintiff had been given control of the finances of the 22nd District Court at the direction of Defendant Deborah Green. Jones thereafter, in conspiracy with Hampton, publicly accused Plaintiff of embezzlement and other criminal acts to defame Plaintiff and to cause her removal from the bench.

In early 2011, Jones filed a judicial tenure complaint against Plaintiff with the Defendant JTC. *Id.* ¶¶ 21-23. In response to the JTC complaint against Plaintiff, the Chief Justice of the Michigan Supreme Court took an informal vote of the associate justices to remove Plaintiff from office, placed Plaintiff on "administrative leave," and gave her less than 3 hours to leave her office, informing her that she would be permitted to return at a later date to remove her personal items. *Id.* ¶ 25. Defendant Green compiled a list of judges who were eligible to serve as interim replacements for Plaintiff during her administrative leave, and Defendant Washington was selected to serve as Interim Chief Judge of the 22nd District Court. The day after Plaintiff was placed on administrative

leave, Washington and Green met with staff of the 22nd District Court and instructed them not to have any contact with Plaintiff. *Id.* ¶¶ 26-27.

In May, 2011, Plaintiff and her attorney met with Defendant Green and Green's superior at the SCAO offices to discuss the procedures associated with Plaintiff's administrative leave. Green was advised that the safe in Plaintiff's office contained personal documents and that there were personal documents in Plaintiff's private office. Green committed to Plaintiff that Green would not allow the violation of Plaintiff's privacy rights and that no one would open Plaintiff's personal safe outside of Plaintiff's presence. Despite this commitment, Plaintiff alleges that at some point in 2011, Green and Washington "failed to safeguard, authorized or broke into" Plaintiff's personal safe, without a warrant and without notice to the Plaintiff. *Id.* ¶ 28. Defendant Anderson removed and/or destroyed exculpatory evidence, including documents found in Plaintiff's private safe and office, and altered Court documents to create the appearance of wrongful conduct on the part of Plaintiff. *Id.* ¶¶ 33-34.

On June 14, 2011, Green and Washington acted as investigators for Fischer and the JTC and, at their direction, 22nd District "Court staff" read and provided "those documents"[2] to Defendant Fischer and his office. *Id.* ¶ 30. Plaintiff alleges that for more than nine months during 2011 and 2012, Plaintiff was denied access to her personal and Court documents, including exculpatory documents, that were in her office when she was placed on administrative leave. Staff of the 22nd District Court stopped speaking to Plaintiff but cooperated with Fischer and his staff in interviews.

---

[2] Defendants submit that it is unclear what "those documents" refers to in Paragraph 30 of the Complaint. Regardless, as to Defendant Anderson (the only Defendant against whom the Court finds that Plaintiff has plausibly alleged a Fourth Amendment claim) paragraph 34 clearly alleges that Anderson removed the personal documents from Plaintiff's safe. Therefore, any pleading deficiency found in Paragraph 30 would not defeat the plausibility of the claim as to Anderson.

*Id.* ¶ 31.

Plaintiff alleges that Defendant Anderson participated in a conspiracy to remove Plaintiff from office by providing false information to Fischer in exchange for a promise from Green that Anderson could "keep her license" if she cooperated in the investigation of Plaintiff. *Id.* ¶ 33.

At some point during 2011, Plaintiff was given one hour to come the 22nd District Court, where she was supervised by Green and Washington, and was allowed to remove items from her office. It was at this time that Plaintiff learned that her personal safe had been dismantled and that many of the documents that would have been exculpatory had been removed. *Id.* ¶ 35. Plaintiff alleges that as of the date she was placed on administrative leave, the premises of her private office were within the total control of Defendants Washington, Green and Fischer and that if Fischer had reason to believe that Plaintiff's private office contained proof of judicial misconduct, he was required to obtain a warrant. *Id.* ¶ 46.

From January, 23 2012 to March 1, 2012, a formal administrative hearing was held before a master appointed by the Michigan Supreme Court, retired district court judge Ann Mattson. Compl. ¶ 38. *See also In re James*, 492 Mich. 553 (2012). Plaintiff alleges that Mattson made pretrial rulings that denied Plaintiff due process as it related to information that was illegally obtained through the warrantless search of Plaintiff's office and safe. Compl. ¶ 38. Plaintiff alleges that the majority of the allegations in the JTC complaint against her were based upon the fruits of the illegal search of her office and safe. *Id.* ¶ 40. Plaintiff also alleges that Fischer instigated the investigation and complaint against Plaintiff because she was an African-American woman, as was clear from his refusal to prosecute white male and female judges who were guilty of misconduct far more serious than that alleged as to Plaintiff. *Id.* ¶ 39.

**B.**      **Procedural Background and the Sixth Circuit Remand Order**

This is the second remand of this action from the Sixth Circuit; the first followed Plaintiff's appeal of Judge Zatkoff's April 2, 2012 decision to abstain and dismiss this action under *Younger v. Harris*, 401 U.S. 37 (1971), pending the outcome of the state court administrative proceedings that were then in progress against Judge James. In the first remand, the Sixth Circuit held that while *Younger* abstention was appropriate, Judge Zatkoff should have stayed the case pending the outcome of the state court administrative proceedings rather than dismiss, in order to avoid Plaintiff's encountering any statute of limitations issues following the state court administrative process. *James v. Hampton*, 513 F. App'x 471 (6th Cir. 2013). Upon final resolution of the state administrative proceedings against Judge James, which found sufficient evidence of misconduct to remove her from office, Judge Zatkoff entertained and granted the Inkster and State Defendants' motions to dismiss James's Fourth Amendment Unlawful Search and Fourteenth Amendment Equal Protection claims for failure to state a claim and declined to exercise supplemental jurisdiction over James's state law claims. *James v. Hampton*, No. 12-10273, 2013 WL 6839136 (E.D. Mich. Dec. 27, 2013).

Plaintiff again appealed Judge Zatkoff's dismissal of her claims and the Sixth Circuit again reversed, remanding for further proceedings that are now before this Court. *James v. Hampton*, 592 F. App'x 449 (6th Cir. 2015). The Sixth Circuit concluded that Plaintiff has plausibly pled a Fourth Amendment claim against both the Inkster Defendants and the State Defendants based upon the warrantless search of the locked safe that James kept in her office at the 22nd District Court. 592 F. App'x at 459 ("[W]e find that James has stated a claim that the search of her locked personal safe was unreasonable [and] reverse the district court's dismissal of James's Fourth Amendment

6

claim.").[3]

Examining James's claim under the special needs exception for workplace searches enunciated by the Supreme Court in *O'Connor v. Ortega*, 480 U.S. 709 (1987), the Sixth Circuit concluded that James had a reasonable expectation of privacy in both her office and her locked safe. In so holding, the Sixth Circuit noted (1) that there were no office regulations or policies regarding routine or random searches or employer access that would have diminished James's reasonable expectation of privacy, (2) James kept personal belongings in the safe, (3) James secured the safe with two locks and there was no evidence that any one else had access to the safe, (4) James purchased the safe with her own funds, and (5) James maintained the safe for her exclusive use. 592 F. App'x at 456. Having found that James had a reasonable expectation of privacy in her office and safe, the Sixth Circuit then analyzed the reasonableness of the search of the office and the safe separately, considering the two-prong "special needs" workplace exception established in *O'Connor* which asks: (1) was the search reasonable at its inception, *i.e.* were there reasonable grounds to suspect that the search would turn up evidence that the employee is guilty of workplace misconduct, and (2) was the search reasonable in scope, *i.e.* were the measures adopted reasonably related to the objectives of the search and not excessively intrusive given the nature of the misconduct. *O'Connor*,

---

[3] Also reversing and remanding James's separate equal protection claim, the Sixth Circuit explicitly noted: "Because James has not alleged an equal protection claim against the Inkster Defendants, on remand the district court need only consider this claim against the State Defendants." 592 F. App'x at 461. By contrast, when reversing the district court's dismissal of Plaintiff's Fourth Amendment claim, and finding that Plaintiff had plausibly alleged a Fourth Amendment claim, the Sixth Circuit made no distinction between the Inkster Defendants and the State Defendants and indeed, as discussed *infra*, referenced specific conduct of the Inkster Defendants, in particular of Defendant Anderson, in finding that the Fourth Amendment claim had been plausibly pled. The State Defendants have not moved at this time to dismiss either the Fourth Amendment or the Equal Protection claim.

480 U.S. at 726.

As a preliminary matter, the Sixth Circuit analyzed whether James's office and her personal safe were part of "the workplace context." 592 F. App'x at 456. The majority opinion concluded that the office was part of the "workplace context," but that James's personal safe, which the court determined was "analogous to a piece of closed personal luggage or a briefcase because it was not within the employer's control," was not properly considered part of the workplace context and concluded that "the warrantless search of the safe falls outside the bounds of the special needs exception to the warrant requirement altogether." *Id.* at 457. The Sixth Circuit concluded that because the safe fell outside the workplace context, it was subject to the general warrant and probable cause requirement under the Fourth Amendment, and held that Plaintiff's Complaint adequately alleged a Fourth Amendment claim for the warrantless search of her safe: "The complaint states that the safe was searched absent a warrant, probable cause, or exception. These allegations sufficiently state an illegal search claim under the Fourth Amendment." *Id.*[4]

The Sixth Circuit then analyzed the search of both the office and the safe (assuming *arguendo* as to the safe that it did fall within the workplace context) under the *O'Connor* workplace exception for reasonableness at inception and in scope. *Id.* at 457. The Sixth Circuit concluded that the search of James's office space was reasonable at its inception because there were "'reasonable grounds' for suspecting that a search of James's office would yield evidence that James was 'guilty

---

[4] Judge Batchelder dissented, finding "untenable" the majority's assumption that a safe is more analogous to a portable, lightweight briefcase or piece of luggage than the more permanent office fixtures of a desk or filing cabinet. Thus, Batchelder would apply the *O'Connor* special needs exception for the workplace to both the office and the safe and would conclude that the search of both the office and the safe was reasonable, both at inception and in scope, and would affirm Judge Zatkoff.

of work-related misconduct.'" 592 F. App'x at 458 (quoting *O'Connor*, 480 U.S. at 726). The Sixth Circuit also concluded that a thorough search of James's office proper, an area that "might contain financial and employment records," was reasonable in scope given the nature of the allegations of misappropriation of public funds and employment irregularities against James and given her acknowledgment in her Complaint that she had taken control of the court finances in 2010. *Id*. at 459.

The Sixth Circuit reached a different conclusion as to the reasonableness of the search of James's safe, which it analyzed under the special needs exception *assuming*, for the sake of argument, that it did fall within the workplace exception, which the court previously held it did not. As to the safe, the majority reasoned that, because James alleged in her Complaint that she purchased the safe for personal use and kept it under lock and key, these facts were "sufficient to establish a plausible claim that it was excessively intrusive to search her personal safe, because evidence of work-related misconduct was unlikely to be found there." *Id*. at 459 (citing *O'Connor*, 480 U.S. at 726).[5]

---

[5] As discussed *supra*, the Sixth Circuit also concluded that James plausibly alleged an equal protection claim against the State Defendants, and remanded that claim to this Court, noting that James did not allege a Fourteenth Amendment Equal Protection claim under 42 U.S.C. § 1983 against the Inkster Defendants. The Sixth Circuit noted that to prevail on a Fourteenth Amendment Equal Protection Claim, Plaintiff must "prove the same elements required to establish a disparate treatment claim under Title VII," the fourth element of which requires proof that similarly situated individuals were treated differently. James, an African American, claimed that several white judges of the 22nd district court had engaged in misconduct and not been disciplined. The Sixth Circuit held that James's Complaint contained sufficient factual matter regarding the "comparator" white district court judges to survive a motion to dismiss. *Id*. at 461. The Sixth Circuit found that James alleged factual content regarding the misconduct of other judges, "sufficient to draw a reasonable inference of discrimination because she points to specific instances of abuse of power by white judges." *Id*. The case continues against the State Defendants on James's Equal Protection claim and Fourth Amendment claim, and, as mentioned *supra* at n. 3, neither claim has been challenged at this pleading stage by the State Defendants.

The Inkster Defendants now move to dismiss James's Complaint against them arguing that, even if James has plausibly alleged a Fourth Amendment claim, the allegations of the Complaint are insufficient as to any of them to plausibly suggest their involvement in the conduct that underlies James's Fourth Amendment claim, *i.e.* the warrantless search of her personal safe. In concluding that James has plausibly alleged a Fourth Amendment claim based on the warrantless search of her personal safe, the Sixth Circuit did not distinguish between the alleged culpability of the Inkster Defendants and the State Defendants as it did with respect to James's equal protection claim, which the Sixth Circuit explicitly remanded for consideration only as to the State Defendants.

In response to the Inkster Defendants' motion, Plaintiff expressly concedes that she does not now assert and has never asserted her Fourth Amendment claims against Inkster, Hampton and Jones: "Plaintiff does not dispute that her Fourth Amendment claim is not, and never was, asserted against Inkster, Jones and Hampton (and therefore agrees that there are no claims pending against Inkster, Jones and Hampton in light of the January 7, 2015 Opinion of the Sixth Circuit)."[6] (Pl.'s Resp. 11.) Therefore, the Court GRANTS the motion to dismiss as to the City of Inkster, Jones and Hampton and DISMISSES Plaintiff's claims against them with prejudice.

Plaintiff does assert, however, that she did "properly plead her claim of a Fourth Amendment violation against Anderson and therefore," Plaintiff suggests, "the instant Motion should be denied as to Anderson." (Pl.'s Resp. 11.) The Court now turns to the merits of the motion to dismiss as to

_____

[6] At the hearing on the Inkster Defendants' Motion to Dismiss, counsel for Plaintiff suggested that he "thought" perhaps this acknowledgment that Plaintiff was not asserting her Fourth Amendment claim against the City of Inkster, Jones or Hampton may have been a "typographical" error. Not only is this suggestion much too tardy and offhand to merit consideration by the Court, it is also utterly discredited by the very next sentence of Plaintiff's Response, which reiterates Plaintiff's affirmation that "there are no claims pending against Inkster, Jones and Hampton in light of the January 7, 2015 Opinion of the Sixth Circuit."

Defendant Anderson.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.  When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  But the court "need not accept as true legal conclusions or unwarranted factual inferences."  *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).  "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 555 (internal citations omitted). Dismissal is appropriate if the plaintiff has failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Id.* at 570.  The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Id.* at 1948-50. A plaintiff's factual allegations, while "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 127 S.Ct. at 1965). Thus, "[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 127 S.Ct. at 1969).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint or that are central to plaintiff's claims (2) matters of which a court may take judicial notice (3) documents that are a matter of public record and (4) letters that constitute decisions of a government agency. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). *See also Greenberg v. Life Ins. Co. Of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (finding that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed to form a part of the pleadings). Where the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claims could survive a motion to dismiss simply by failing to attach a dispositive document." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

## III.  ANALYSIS

### A.  The Fourth Amendment Claim Against Anderson

The Sixth Circuit summarized James's allegations of a Fourth Amendment violation as

follows: "James argued that both the Inkster and State Defendants violated her Fourth Amendment rights to be free from unreasonable searches and seizures when they searched her office and broke into her locked personal safe without a warrant or a showing of probable cause." The Sixth Circuit made specific reference in its summation of this claim to the allegation in Plaintiff's Complaint that "Anderson, the court administrator for the 22nd District Court, removed and/or destroyed exculpatory evidence from her safe and office." 592 F. App'x at 452-53. This allegation is found in paragraph 34 of Plaintiff's Complaint which asserts that:

> Upon information and belief, Defendant Anderson removed and/or destroyed exculpatory evidence, including that found in the Plaintiff's private safe and office, and altered Court documents to create the appearance of wrongful conduct on the part of Plaintiff.

Compl. ¶ 34.

Plaintiff is entitled to all of the plausible inferences from the facts alleged in her Complaint and a plausible inference from the allegation that Anderson "removed" documents from the safe, in the context of the allegations of the Complaint as a whole, is that Anderson, the Court Administrator for the 22nd District Court, was personally involved in the warrantless search of the safe. Given this allegation against Anderson plausibly suggesting that she directly participated in the warrantless search of Plaintiff's safe, and particularly in light of the fact that the Sixth Circuit deemed it important to reference this very allegation when summarizing Plaintiff's Fourth Amendment claim, the Court is not inclined to dismiss Anderson from the case at this stage of the proceedings.

Defendants focus on the allegations of paragraph 30, which refer to "court staff" generally, do not identify where the "documents" referenced in that paragraph came from and do not explicitly name Anderson. Defendants suggest that these allegations are not sufficient to nudge the claims against Anderson into the realm of plausibility because the Sixth Circuit found that James did not

have a reasonable expectation of privacy in her office and thus the "documents" referred to in paragraph 30 could have been sitting out in the open space of James's office, in which case the allegation that "court staff read and provided" those documents to Fischer would not implicate the warrantless search of James's safe and thus would not state a plausible Fourth Amendment claim. Even assuming the allegations of paragraph 30 are insufficient to plausibly suggest a claim as to Anderson, this pleading deficiency is cured by the allegations of paragraph 34, which expressly alleges Anderson's involvement in removing (and/or destroying) documents "found in" Plaintiff's private safe. Admittedly the exact details of Anderson's alleged participation in the warrantless search of the safe are lacking, i.e. did she participate in opening the safe, provide a key, reach in to take documents out, stand by while others did, receive the documents from some other individuals and then cull the documents for and destroy exculpatory evidence? Without question, where Anderson's conduct is found to have fallen, if at all, on this continuum ultimately will inform the constitutional analysis. However, taking a cue from the Sixth Circuit's reference to this very allegation in its summation of Plaintiff's Fourth Amendment claim, the Court concludes that enough has been alleged as to Anderson's involvement in the alleged unconstitutional search of James's personal safe to raise the claim against Anderson above the level of pure speculation. These allegations, *i.e.* that Anderson participated in the "removal" of documents from Plaintiff's locked safe, and that she withheld and/or destroyed documents that may have served to clear Plaintiff of the charges she faced in the state administrative proceedings, are sufficient to plausibly implicate Anderson in the Fourth Amendment violation that the Sixth Circuit determined has been plausibly pled.

Defendants also argue that paragraph 34 fails to plausibly allege that Anderson "acted under color of state law" when she allegedly removed and/or destroyed documents from the safe. The Complaint alleges that Anderson is the Court Administrator for the 22nd District Court for the City of Inkster. Compl. ¶ 10. Defendants failed to explain, either in briefing or at oral argument, the basis for their contention that the Complaint fails to adequately allege that Anderson acted under color of state law. Their argument appears to rest on the "suggestion" that Plaintiff "may" have been acting entirely "on her own" – an inference not logically suggested by any of the allegations of Plaintiff's Complaint. The Court finds that the Complaint sufficiently alleges that Anderson acted under the color of state law when she allegedly participated in the warrantless search of Plaintiff's personal safe.

While several of the allegations of Plaintiff's Complaint relating to the warrantless search of her office and safe are directed to conduct of the State Defendants, the allegations as to Anderson in paragraph 34 of the Complaint, which the Sixth Circuit deemed it important to mention when summarizing Plaintiff's plausibly pled Fourth Amendment claim, cannot be ignored. Granted, detailed allegations regarding Anderson's exact role in the illegal search are lacking. Was she present when the safe was opened? Did she provide access or help to open it? Was she only called in days later to review documents that Washington and Green withdrew? Though this case is several years old, it is still at the pleading stage and the absence of these factual details does not defeat the plausibility of Plaintiff's claim against Anderson at this stage.

In finding that the Complaint plausibly alleged a Fourth Amendment claim and remanding for further proceedings, the Sixth Circuit did not deem it necessary to consider with greater exactitude the nature of Anderson's role in the search and indeed specifically pointed to the

allegations that Anderson "removed" documents from Plaintiff's personal safe when summarizing the factual predicate for the claim. 592 F. App'x at 453. Discovery may reveal facts that distance Anderson's conduct from the alleged warrantless search, but at this pleading stage, Plaintiff has alleged sufficient factual matter to plausibly suggest that Anderson was personally involved in the warrantless search so that the Fourth Amendment claim against her may proceed at this stage. Accordingly, the Court DENIES Defendant Anderson's motion to dismiss.

### B.      The "Policy" Claim Against Inkster and Hampton

A municipality can be held liable under § 1983 where it is shown that a municipal custom or policy is the driving force behind the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (stating that the drafters of § 1983 intended only to impose liability on a government that "causes" an employee to violate another's rights under color of some official policy). To prevail in such a suit, the plaintiff must show that the alleged violation of his federal rights was caused by a municipal policy or custom. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). A plaintiff asserting a § 1983 claim on the basis of municipal custom or policy must identify the policy, connect the policy to the municipality, and show that the specific injury at issue was caused by the execution of that policy. *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). The causal link must be strong enough to support a finding that the municipal defendants' deliberate conduct can be deemed the "moving force" behind the violation. *Id.* (quoting *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001)).

In *Thomas*, the Sixth Circuit identified four ways a plaintiff may prove the existence of an illegal policy or custom. 398 F.3d at 429. The plaintiff can point to (1) the government's legislative enactments or official policies; (2) actions by officials with final decision-making authority; (3) a

policy of inadequate training or supervision; or (4) a custom or practice of tolerating the violation of federal rights by its officers or agents. *Id.* Where no formal policy exists, the critical inquiry is whether there is a policy or custom that although not explicitly authorized "is so permanent and well settled as to constitute a custom or usage with the force of law." *Jones v. Muskegon County*, 625 F.3d 935, 946 (6th Cir. 2010) (quoting *McClendon v. City of Detroit*, 255 F. App'x 980, 982 (6th Cir. 2007)). A municipality cannot be held liable pursuant to 42 U.S.C. § 1983 on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691-95; *Phillips*, 534 F.3d at 543 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). It is well accepted that 42 U.S.C. § 1983 "is not itself a source of substantive rights; instead, it is a means for vindicating federal rights conferred elsewhere. The initial step in any § 1983 analysis is to identify the specific constitutional right which was allegedly violated." *Gossmeyer v. McDonald*, 128 F.3d 481, 489-90 (6th Cir. 1997) (citations omitted).

As discussed *infra*, the contours of Plaintiff's "policy" claim are entirely unintelligible. More important, and dispositive of this claim, is the fact that at no point in the almost four-year history of this case, until the filing of Plaintiff's brief in response to the instant motion to dismiss, has Plaintiff ever pled, argued or even alluded to a *Monell* claim. Nor has Plaintiff ever sought leave to amend her Complaint to add such a claim. Tellingly, Plaintiff did not mention this claim at the hearing on Defendant's motion to dismiss. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Indeck Energy Servs. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000). *See also Bishop v. Gosiger, Inc.*, 692 F. Supp. 2d 762, 774 (E.D. Mich.2010) ("'It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to put flesh on its bones.'") (quoting

*Meridia Prods. Liab. Lit. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006)). For this reason alone, the Court refuses to consider the plausibility of such a claim.

Even were the Court to consider such a claim now, this late-breaking, poorly articulated "claim," suffers from multiple deficiencies and fails to plausibly suggest a viable *Monell* claim. First, given Plaintiff's concession that "there are no claims pending against Inkster, Hampton or Jones in light of the January 7, 2015 Opinion of the Sixth Circuit," the Court is left to wonder if Plaintiff is attempting to assert some type of official capacity claim against Anderson, the only remaining Defendant against whom she purports to have a claim? But Anderson is not named in the Complaint in her official capacity, so such a claim in untenable.

Plaintiff claims in her Response brief that she "has alleged that the City of Inkster, by and through its chief executive Hampton, has, since 2011, engaged in the custom, policy and practice of ignoring and disregarding the sovereignty of the 22nd District Court." Pl.'s Resp. 15. Is Plaintiff suggesting a direct claim against the City of Inkster (even though she expressly disavows any pending claims against the City of Inkster or Hampton) based upon a policy, or the actions of a decision-making official, that are the source of the alleged constitutional violation? If so, what is the policy? What exactly is a "policy" of "ignoring and disregarding the sovereignty of the 22nd District Court?" What is the constitutional right that allegedly has been violated?

The paragraphs of the Complaint that Plaintiff cites in support of her "*Monell* claim" (*see* Pl.'s Resp. 15 referring to Compl. ¶¶ 17-22) do not so much as mention the words "custom, policy, practice or *Monell*." Plaintiff apparently expects the Court to cobble together the allegations of her Complaint to arrive at this nebulous "policy" claim. This claim is simply too unintelligible to analyze. Unenlightened by either Plaintiff's briefing or oral argument, the Court is unable to discern

a plausible *Monell* claim from the allegations of the Complaint, even were it inclined to consider this late-breaking claim, which it is not.

Because Plaintiff: (1) has not pled, argued or even alluded to a *Monell* claim in the four year history of this case; (2) never sought leave to amend her complaint to add such a claim; (3) concedes in her Response there are "no claims pending against Inkster, Jones and Hampton in light of the Sixth Circuit's remand opinion"; and (4) because in any event Plaintiff has failed to articulate an intelligible *Monell* claim, the Court GRANTS Defendants' Hampton, Jones and the City of Inkster's motion to dismiss.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Anderson's motion to dismiss and GRANTS Defendants Jones, Hampton and the City of Inkster's motion to dismiss and DISMISSES Plaintiff's claims against Jones, Hampton and the City of Inkster WITH PREJUDICE.

A Scheduling Order will follow the entry of this Opinion and Order.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 2, 2015

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 2, 2015.

s/Deborah Tofil
Case Manager