UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SYLVIA JAMES,

       Plaintiff,                          No. 12-10273

v.                                     District Judge Paul D. Borman
                                            Magistrate Judge R. Steven Whalen

HILLIARD HAMPTON, ET AL.,

       Defendants.
_____/

**OPINION AND ORDER**

      Plaintiff Sylvia James is a former Michigan state court judge who was removed from office by the Michigan Supreme Court in 2012 following an investigation and recommendation by the Michigan Judicial Tenure Commission ("JTC"). She filed the present action against the JTC and other Defendants under 42 U.S.C. § 1983, alleging violation of her rights under the Equal Protection Clause of the Fourteenth Amendment. Ms. James is an African-American female. The gist of her claim is that the JTC chose not to recommend discipline of Caucasian judges who were alleged to have engaged in similar judicial misconduct. This case has twice been remanded by the Sixth Circuit. In its latest opinion [Doc. #56], the Sixth Circuit reversed an order of dismissal, holding that Ms. James had pled a plausible *prima facie* equal protection claim.

      **I.   BACKGROUND**

      In the present motion to compel discovery from the JTC Defendants [Doc. #72], Ms. James seeks "information about requests for investigation submitted to the JTC in order to ascertain necessary information about judges against whom the JTC declined to file a formal complaint for the period of May 2001 through May 2011, including those

-1-

specifically identified as examples of disparate treatment in her Complaint." *Brief in Support of Motion*, at 6, Pg. ID 1866 [Doc. #72](emphasis in original). The JTC interposed an objection based on M.C.R. 9.221, which establishes a State privilege. Although not raised in its objections, the JTC now claims protection under the deliberative process privilege as well.

## II. DISCUSSION

### A. M.C.R. 9.221

The Michigan Court Rules, specifically M.C.R. 9.221(a), set forth a privilege that bars disclosure of JTC material:

> **(A) Scope of Rule**. Except as provided in this rule, all papers filed with the commission and all proceedings before it are confidential in nature and are absolutely privileged from disclosure by the commission or its staff, including former members and employees, in any other matter, including but not limited to civil, criminal, legislative, or administrative proceedings. All the commission's investigative files and commission-generated documents are likewise confidential and privileged from disclosure. Nothing in this rule prohibits the respondent judge from making statements regarding the judge's conduct.

This Court is not bound by a state statutory privilege not also found in federal statutes or common law. *Pearson v. Miller,* 211 F.3d 57, 61 (3rd Cir. 2000). *See also Hancock v. Dodson,* 958 F..2d 1367, 1373 (6th Cir. 1992). Generally, under Fed.R.Ev. 501, federal courts are bound only by privileges currently recognized by federal law. Rule 501 states:

> "Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

Thus, when the claim is grounded in federal law (in this case, the Equal Protection Clause), federal, not state privileges apply. *Pearson* at 66. The Senate Report accompanying the adoption of Rule 501 "should be understood as reflecting the view that the recognition of a privilege based on a confidential relationship ... should be determined on a case-by-case basis." *Jaffee v. Redmond* 518 U.S. 1, 8 (1996); S.Rep. No. 93-1277, p. 13. Nonetheless, "[f]ederal courts have generally declined to grant requests for new privileges." *Pearson*, 211 F. 3d at 67. *See, e.g.*, *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990); *United States v. Nixon,* 418 U.S. 683, 710 (1974) ( privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth"). "In determining whether a privilege should be recognized in a specific instance, courts must start with the fundamental maxim that 'the public...has a right to every man's evidence." *Grabow v. County of Macomb*, 2013 WL 3354505, *5 (E.D. Mich. 2013)(Cohn, J.), quoting *Jaffee* at 9.

In *Grabow*, Judge Cohn explained why Michigan's peer review privilege did not apply in a federal civil rights case brought under 42 U.S.C. § 1983:

> "Because this is a prisoner civil rights case brought under § 1983, federal law supplies the rule of decision, and Rule 501 applies. Indeed, '[t]he claims made here are federal constitutional claims ... It thus appears particularly inappropriate to allow the use of state evidentiary privileges.' *Leon v. Cnty. of San Diego,* 202 F.R.D. 631, 636 (S.D.Cal.2001); *see also Agster v. Maricopa Cnty.,* 422 F.3d 836, 839 (9th Cir.2005) ('But we are not bound by Arizona law....). 'Where, as here, it is alleged that a defendant acted under color of state law to violate a citizen's rights, '[t]he appropriateness of deference to a state's law of privilege is diminished.' *Weiss v. Cnty. of Chester,* 231 F.R.D. 202, 207 (E.D.Pa.2005).
>
> "Although 'Rule 501 has been recognized as allowing the adoption of existing state evidentiary codes to govern federal cases where the state rules are not in conflict with the federal rules,' Michigan's medical peer review privilege conflicts with and harms 'federal substantive and procedural policy' when applied in a § 1983 deliberate indifference case. *See Leon,* 202 F.R.D. at 635 (explaining that California's peer review privilege conflicts with liberal discovery rules applicable in federal courts in § 1983 deliberate

indifference case). Indeed, '[t]he absolute bar on discovery provided by [Michigan's peer review privilege] conflicts with the liberal discovery rules applicable in federal courts, and it conflicts with the necessity of finding state action inherent in the federal civil rights law.' *Id*. at 636. Accordingly, Michigan's peer review privilege is inapplicable to this case."

The same reasoning applies to M.C.R. 9.221(a). Here, as in *Grabow*, we have a federal constitutional claim, giving primacy to the Plaintiff's interest in discovery vis-a-vis Michigan's interest in confidentiality. The question of whether the JTC treats Caucasian judges differently from African-American judges is at the heart of Plaintiff's Equal Protection claim, so the requested discovery is not only relevant, but critical to the disparate treatment inquiry.

In *Lawrence v. VanAken*, 2004 WL 228989 (W.D. Mich. 2004), the Court found that the prior iteration of M.C.R. 9.221 made JTC files confidential, but did not create a state privilege. Nevertheless, *VanAken* reasoned that even if Michigan law accorded privilege to JTC records (as the newer version of the Rule does), there is no "broad national consensus" on the existence of such a privilege that would justify incorporating it into federal common law under Fed.R.Ev. 501:

> "In the present case, the JTC is, in essence, asking this court to fashion a new common-law privilege from whole cloth, in the absence of any appellae authority recognizing a federal privilege for judicial disciplinary proceedings in Michigan or any other state." *Id*. at *5.

Although I find that M.C.R. 9.221(a) has no analogue in federal common law, and is thus inapplicable in a federal constitutional claim, I do recognize the State confidentiality interests at which the Rule is directed. And while those interests are not controlling in this case, they can and will be adequately vindicated by a protective order that limits disclosure and use of any JTC material that is disclosed.

### B. Deliberative Process Privilege

In *Liuzzo v. United States,* 508 F.Supp. 923, 937 (E.D.Mich.1981), the Court held

that the deliberative process privilege protects from discovery "intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." To come within the protection of the deliberative process privilege, the material must of necessity be "deliberative" or "evaluative." In *Kaiser v. Aluminum & Chemical Corp. v. United States,* 141 Ct.Cl. 38, 157 F.Supp. 939, 946 (1958), the Court explained that while the privilege applies to "confidential intraagency advisory opinions," it does not extend to "objective facts" upon which an agency's decisions are based. *See also Lewis v. City of Detroit,* 234 F.R.D. 157, 160 (E.D.Mich. 2006)(the privilege does not extend to the facts).

In this case, the Plaintiff seeks purely factual material. Plaintiff is therefore entitled to the disclosure of "factual information regarding each person against whom the JTC declined to file a formal complaint between May 2001 and May 2011, and information regarding each person against whom the JTC did file a formal complaint, such as their race, gender, nature of complaint, date of complaint and identity of grievant." *See* Plaintiff's Reply Brief [Doc. #76], at 3; Plaintiff's Interrogatory Nos. 12 and 13. Plaintiff is not entitled to "staff memoranda to the Commission, reports and recommendations prepared by or at the request of the Commission, and minutes or other documents reflecting the deliberations and votes of Commissioners." *VanAken*, at *7.

### III. CONCLUSION

Plaintiff's motion to compel discovery from the JTC Defendants [Doc. #72] is GRANTED, with the exception of JTC records described above that would fall within the deliberative process privilege.

All documents produced under this Order are subject to a protective order whereby they will not be disclosed to any person or entity not involved in the prosecution or

defense of this lawsuit, nor used for any purpose other than preparation, litigation, trial, and appeal of this action. At the conclusion of this litigation, the documents will be returned to the JTC.

    IT IS SO ORDERED.

                                          s/R. Steven Whalen
                                          R. STEVEN WHALEN
                                          UNITED STATES MAGISTRATE JUDGE

Dated: December 29, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on December 29, 2015, electronically and/or by U.S. mail.

                                          s/Carolyn M. Ciesla
                                          Case Manager