# EXHIBIT 4



**Michigan Supreme Court**
State Court Administrative Office
Michigan Hall of Justice
P.O. Box 30048
Lansing, Michigan 48909
Phone (517) 373-0128







Chad C. Schmucker
State Court Administrator

April 15, 2011

The Honorable Valdemar Washington
Interim Chief Judge
22nd District Court
27331 S. River Park Dr.
Inkster, MI 48141

Re: Letter of Understanding

Dear Judge Washington:

    I am writing this letter to set forth my understanding of your role as chief judge. While I may have mentioned in our telephone conversation that I would be preparing a contract, I understand that contracts are not generally used when someone is appointed as chief judge. So I decided to handle this with a Letter of Understanding.

    As you know, the Michigan Supreme Court appointed you interim Chief Judge of the 22nd District Court. You have all the powers of a chief judge as outlined in MCR 8.110.

    You will be paid a daily rate for the days you work as chief judge by the State Court Administrative Office (SCAO). The daily rate for a district judge is determined by dividing the annual salary ($138,272) by 250 days, which equals $553.09 per day. State law provides that if a judge is receiving a state retirement, then the maximum daily rate is reduced. It is my understanding, however, that you are not receiving a pension from the judicial retirement system.

    As you know, as an interim chief judge you will be acting as an independent contractor in determining which days you work and how you perform your duties. You will not be entitled to any fringe benefits from the funding unit or SCAO, but you may accrue additional retirement credits as allowed by law. If you are going to be requesting reimbursement for any significant out-of-pocket expense, I would ask that you clear it with me first.

    The Michigan Supreme Court has appointed you as interim chief judge because of a number of recently discovered irregularities in the 22nd District Court. Chief Judge Sylvia James has been asked to not be in the building or discuss with the court employees the operations of the court while she is on administrative leave. If you believe she is not following this directive,

April 15, 2011
Page 2

please report it to me immediately. I am also requesting that you provide to me weekly progress reports.

I am sure you will be contacted by the media. I will leave what you say to the media to your discretion because you are the chief judge. However, I would offer to you as a resource the services of Michigan Supreme Court's Public Information Officer, Marcia McBrien. Marcia can be reached at 313-300-2149.

Once you are involved in the court, I am sure there are a number of matters that will come to your attention. Some of the matters that have come to our attention so far, and which we would like to have you investigate and resolve, are as follows:

1. Is there any reason why the audit recommendations from 2006 and the recent SCAO audit recommendations cannot be implemented? If not, I would like you to take the steps necessary to implement the most recent SCAO audit recommendations, and then the 2006 audit recommendations.

2. Chief Judge James furnished us with some, but not all, of the 1099s for employees in 2009 and 2010. I would like to know if the missing 1099s can be located, and if they cannot, is there a reason why they were not issued? Issue them now if necessary.

3. Adopt procedures to stop all expenditures of a promotion, advertising, or charitable purpose.

4. Our audit disclosed that Chief Judge James and several members of her staff attended the National Drug Court Conference in Boston in 2010. The information on the Internet suggests that this was a four-day conference, but the auditor's information suggests that Chief Judge James and the other employees requested $50 per diems for seven days. Are there any records or recollections that justify this expenditure? Is there adequate documentation for expenses for other conferences that have been attended by Chief Judge James?

5. The Court has spent a substantial amount of money studying the feasibility of a drug court. The court's website suggests that prior to 2006 several court personnel attended several out-of-state conferences, and the recent audit discloses that the judge and several employees attended the 2009 and 2010 National Drug Court Conferences. In spite of all of this training, the court does not have an operational drug court. According to our staff, the 22nd District Court has not seriously pursued this, although they have made some applications that were not approved as they did not meet our standards. Can you determine if the court made any serious progress towards a drug court?

6. I would also like you to straighten up the problems with the community service program and its accounts. Two of the employees acting as the community service coordinators appear to be full-time court employees. Is the work they are performing for the community service program generally performed between 8:00 a.m. and 5:00 p.m.? It is

00002072

April 15, 2011
Page 3

my understanding that it is generally improper to pay full-time employees additional income through a 1099 for work they perform during the work day. Is there any justification for continuing this practice?

7. If the community service account is going to be continued, then establish a budget.

As you may know, the recent SCAO audit focused on 2009 and 2010. We have asked Region 1 Auditor Charlene McLemore to continue her audit and to expand it to cover other years. She will, of course, share with you any findings or concerns from her audit.

I have tried to set forth in this letter all of my understandings and expectations. If anything is inconsistent with your understanding, please let me know immediately. I look forward to working with you on this.

Sincerely,

Chad C. Schmucker
State Court Administrator

cc: Dawn Monk
Marcia McBrien
Deborah Green