UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sylvia James,

Plaintiff,

v

Case No. 2:12–cv–10273
Hon. Paul D. Borman

Hilliard Hampton, *et al.*

Defendants.

_____________________________________________/

Mayer Morganroth (P17966)
Jeffrey B. Morganroth (P41670)
Jason R. Hirsch (P58034)
Joshua A. Fisher (P72598)
Attorneys for Plaintiff
MORGANROTH & MORGANROTH, PLLC
344 North Old Woodward Avenue, Suite 200
Birmingham, MI 48009
248-864-4000

Elliot S. Hall (P14546)
Attorney for Plaintiff
344 North Old Woodward Avenue, Suite 200
Birmingham, MI 48009
248-864-4000

Jeanmarie Miller (P66664)
Attorney for Defendants, JTC, Washington and Green
MICHIGAN ATTORNEY GENERAL
Public Employment, Elections & Tort Division
PO Box 30736
Lansing, MI 48909
517-373-6434

Michael A. Cox (P43039)
Melissa Wojnar-Raycraft (P66476)
Attorneys for Defendant Anderson
THE MIKE COX LAW FIRM PLLC
17430 Laurel Park Drive, North
Suite 120 E
Livonia, MI 48152
734-591-4002

Matthew T. Nelson (P64768)
Allyson Terpsma (P78553)
Attorneys for Defendant Fischer
WARNER NORCROSS & JUDD, LLP
111 Lyon St. NW, Ste 900
Grand Rapids, MI 49503
(616) 752-2474

_____________________________________________/

**PLAINTIFF'S ANSWER TO DEFENDANTS PAUL FISCHER AND THE JUDICIAL TENURE COMMISSION'S MOTION *IN LIMINE* TO EXCLUDE NEWSPAPER ARTICLES AND EDITORIALS**

Plaintiff, Sylvia James, by and through her attorneys, for her Answer to Defendants Paul Fischer and the Judicial Tenure Commission's Motion *in Limine* to Exclude Newspaper Articles and Editorials (the "Motion") states as follows:

The various media at issue in Defendants' Motion are not hearsay because they are not, and have never been, offered as evidence of the judges' wrongdoing, but rather as evidence that the JTC was aware of the serious allegations of misconduct. As such, this evidence is admissible evidence under Fed. R. Evid. 401 and 402. Furthermore, the probative value of this admissible evidence in no way is outweighed by any purported prejudicial effect as suggested by Defendants, and therefore it should not be excluded under Fed. R. Evid. 403.

This Answer is further accompanied by a brief in opposition.

WHEREFORE, Plaintiff respectfully requests that this Court deny the Motion.

Respectfully submitted,

/s/ Jason R. Hirsch
Mayer Morganroth (P17966)
Jeffrey B. Morganroth (P41670)
Jason R. Hirsch (P58034)
Joshua A. Fisher (P72598)
MORGANROTH & MORGANROTH, PLLC
344 North Old Woodward Avenue, Suite 200
Birmingham, MI 48009
248-864-4000

Elliot S. Hall (P14546)
344 North Old Woodward Avenue, Suite 200
Birmingham, MI 48009
248-864-4000

Attorneys for Plaintiff

Dated: November 5, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sylvia James,

Plaintiff,

v

Case No. 2:12–cv–10273
Hon. Paul D. Borman

Hilliard Hampton, *et al.*

Defendants.

/

Mayer Morganroth (P17966)
Jeffrey B. Morganroth (P41670)
Jason R. Hirsch (P58034)
Joshua A. Fisher (P72598)
Attorneys for Plaintiff
MORGANROTH & MORGANROTH, PLLC
344 North Old Woodward Avenue, Suite 200
Birmingham, MI 48009
248-864-4000

Elliot S. Hall (P14546)
Attorney for Plaintiff
344 North Old Woodward Avenue, Suite 200
Birmingham, MI 48009
248-864-4000

Jeanmarie Miller (P66664)
Attorney for Defendants, JTC, Washington and Green
MICHIGAN ATTORNEY GENERAL
Public Employment, Elections & Tort Division
PO Box 30736
Lansing, MI 48909
517-373-6434

Michael A. Cox (P43039)
Melissa Wojnar-Raycraft (P66476)
Attorneys for Defendant Anderson
THE MIKE COX LAW FIRM PLLC
17430 Laurel Park Drive, North
Suite 120 E
Livonia, MI 48152
734-591-4002

Matthew T. Nelson (P64768)
Allyson Terpsma (P78553)
Attorneys for Defendant Fischer
WARNER NORCROSS & JUDD, LLP
111 Lyon St. NW, Ste 900
Grand Rapids, MI 49503
(616) 752-2474

/

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS PAUL FISCHER AND THE JUDICIAL TENURE COMMISSION'S MOTION *IN LIMINE* TO EXCLUDE NEWSPAPER ARTICLES AND EDITORIALS**

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ..... ii

STATEMENT OF CONTROLLING AUTHORITY ..... iii

TABLE OF AUTHORITIES ..... iv

BACKGROUND ..... 1

ARGUMENT ..... 8

I. Standard of Review ..... 8

II. The Media Articles are Not Hearsay ..... 10

III. The Media Articles Are Not More Prejudicial Than Probative ..... 14

A. The JTC and Fischer Asserted Privileges by Choice ..... 14

B. The JTC and Fischer Cannot Use the Voluntarily Asserted Privileges as Both a Sword and a Shield ..... 16

CONCLUSION ..... 17

CERTIFICATE OF SERVICE ..... 18

## STATEMENT OF ISSUES PRESENTED

I. Should Plaintiff be precluded from introducing media articles which report upon allegations of wrongdoing of certain male and/or non-African American judges where such evidence is relevant and not hearsay inasmuch as its purpose is to support Plaintiff's allegations that the JTC was aware of such serious allegations of misconduct?

Plaintiff Answers: No.

Defendants Answer: Yes.

# STATEMENT OF CONTROLLING AUTHORITY

1. Fed. R. Evid. 401.
2. Fed. R. Evid. 402.
3. Fed. R. Evid. 403.
4. Fed. R. Evid. 802.
5. Fed. R. Evid. 803.

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. United States*,
417 U.S. 211; 94 S. Ct. 2253 (1974)........................................................... 9

*Bahena v. City of Chicago*,
2018 U.S. Dist. LEXIS 97852 (N.D. Ill. 2018) ............................................ 15

*Blair v. Henry Filters, Inc.*,
505 F.3d 517 (6th Cir. 2007)........................................................................ 12

*Evans v. Lucas Metro. Hous. Auth.*,
2016 U.S. Dist. LEXIS 177354, 2016 WL 7407539 (N.D. Oh. 2016).............. 14

*Huddleston v. United States*,
485 U.S. 681; 108 S. Ct. 1496 (1988)........................................................... 9

*In re Lott*,
139 Fed. Appx. 658 (6th Cir. 2005)............................................................. 15

*In re Lott*,
424 F.3d 446, 452 (6th Cir. 2005)............................................................... 15

*Luce v. United States*,
469 U.S. 38; 105 S. Ct. 460 (1984)............................................................... 9

*Park W. Galleries, Inc. v. Global Fine Art Registry, LLC*,
2010 U.S. Dist. LEXIS 22872 (E.D. Mich. 2010).......................................... 10

*United States v. Black Bear*,
542 F.3d 249 (8th Cir. 2008)........................................................................ 14

*United States v. Scott*,
69 Fed. Appx. 317 (6th Cir. 2003)............................................................... 10

**Rules**

Fed. R. Civ. P. 26 .......... 3, 4

Fed. R. Evid. 401 .......... iii, 9

Fed. R. Evid. 402 .......... iii

Fed. R. Evid. 403 .......... iii, 9, 14, 17

Fed. R. Evid. 802 .......... iii, 8, 9

Fed. R. Evid. 803 .......... iii, 8, 14

Fed. R. Evid. 902 .......... 14

Mich. Ct. R. 9.207 .......... 12

Mich. Ct. R. 9.221 .......... 2, 14, 15

**BACKGROUND**

Plaintiff filed her Complaint in this matter on January 20, 2012 against Defendants, the Michigan Judicial Tenure Commission (the "JTC"), Paul Fischer ("Fischer"), Deborah Green ("Green") and Valdemar Washington ("Washington") (together, the "State Defendants"), and the City of Inkster, Hilliard Hampton and Pamela Anderson ("Anderson") (together, the "Inkster Defendants"). Docket No. 1. Therein, among other things, Plaintiff raised claims for (a) violations of the Equal Protection Clause; and (b) the prohibition of warrantless searches under the Fourth Amendment. *Id.*

With respect to her Equal Protection claim, Plaintiff alleges, among other things, that Defendants, the JTC and Fischer, the JTC's executive director at all relevant times (together, the "JTC Parties"), and Green, regional administrator with the Michigan State Court Administrator's Office, engaged in actions that violated Plaintiff's rights under the Equal Protection Clause. Without limitation, Plaintiff alleges that the JTC Parties were not gender and race neutral in connection with their treatment of female and African American judges, and Green was not race neutral in connection with her decisions to file grievances with the JTC.

**Privileges Asserted by the JTC.**

In order for Plaintiff support her claim for violation of the Equal Protection Clause, during discovery she sought information about all requests for

investigation submitted to the JTC, and investigative files of the JTC (collectively, the "JTC Files"), in order to ascertain necessary information about judges (race and gender) against whom grievances had been filed but against whom the JTC declined to file a formal complaint for the period of May 2001 through May 2011. Initially, the JTC refused to produce any of this information, asserting privilege under Mich. Ct. R. 9.221, which required Plaintiff to file a motion to compel production of the same. Docket No. 72. Plaintiff asserted that Mich Ct. R. 9.221 is an inapplicable state law privilege that has not been recognized by a federal court in a federal question case. Plaintiff's motion was referred to Magistrate Judge Whalen, who agreed with Plaintiff and entered an order on December 29, 2015, granting Plaintiff's motion in part, and ruling that "Mich. Ct. R. 9.221 has no analogue in federal common law, and is thus inapplicable in a federal constitutional claim . . ." Docket No. 78 at Page ID 2058.

Despite Magistrate Judge Whalen's order to resolve the dispute regarding the production of the JTC Files, at a May 12, 2016 status conference regarding the above-referenced issues, the parties agreed that the JTC would produce anonymized versions of the JTF Files to Plaintiff, and would also produce complete versions of the JTC Files to Magistrate Judge Whalen for his in camera review of the JTC Files in order to permit Magistrate Judge Whalen to determine the race and gender of the judges associated with each JTC File (the "Agreement").

Docket No. 94.

From June 3, 2016 (the date JTC produced the first anonymized versions of incomplete JTC Files) through August 2018, Plaintiff had to constantly address the JTC's ongoing failures to produce all of the required JTC Files. During this time period, despite having withheld numerous categories of documents unbeknownst to Plaintiff, the JTC never provided a privilege log as required by Fed. R. Civ. P. 26(b)(5)(A) until finally producing a generic privilege log in July 2018.

In October 2017, Plaintiff was left with no choice but to file another motion to compel (Docket No. 112) inasmuch as the JTC had improperly withheld numerous categories of documents in violation of the Agreement and without providing a privilege log identifying such improperly withheld documents. In response to Plaintiff's request for concurrence in Plaintiff's Motion to Compel the Complete JTC Files, counsel for the JTC, for the first time, asserted that "complete files minus information that is privileged" had been produced. In response, both the JTC and Fischer argued for the first time that the categories of documents sought were protected by the attorney work product privilege. Docket Nos. 120 & 121.

On April 18, 2018, Magistrate Judge Whalen issued an Opinion and Order (Docket No. 133) (the "April 2018 Order") wherein he ordered the JTC to produce the Complete JTC files, but permitted the JTC to withhold the information the JTC

contended was protected from disclosure based on the categories of privilege outlined in the April 2018 Order, which included the work product privilege, deliberative process privilege and settlement privilege. Docket No. 133. The April 2018 Order further ordered the JTC to provide a privilege log identifying the portions of the JTC files which the JTC was withholding on the grounds of privilege, as it is required to do under Fed. R. Civ. P. 26(b)(5)(A). *Id.* at Page ID 3566. The JTC did not object to the April 2018 Order, and therefore the April 18, 2018 Order is final in all respects. *Id.*

**Plaintiff's Comparator Judges.**

The JTC (together with Green and Washington), and Fischer, filed their respective dispositive motions on May 25, 2018. Docket Nos. 134 & 135. In response to the JTC and Fischer's dispositive motions, Plaintiff presented evidence that the JTC, Green and Fischer violated her Equal Protection rights by treating Plaintiff differently than male and non-African American judges. Docket No. 142 at Page ID 5027-5031; Docket No. 143 at Page ID 5416-5419. Specifically, Plaintiff provided numerous examples where the JTC, Green and Fischer had treated Plaintiff differently than similarly situated male and non-African American judges (the "Comparator Judges"). *Id.*

First, Plaintiff demonstrated that although Green investigated Plaintiff and filed a grievance against her, Green did <u>not</u> file any grievances against other male

and non-African American judges who also had serious questions raised about their conduct. Docket No. 142 at Page ID 5027-5028. As support for this, Plaintiff attached a media report showing that, just a few years prior to Green's investigation of Plaintiff, it was reported that a 28th District Court Judge, James Kandrevas, a Caucasian male judge in Green's region, had been sued by two of the court's former administrators who alleged that Judge Kandrevas fired them after they objected to how he created bank accounts and used money, as well as allegations that the court had made fraudulent representations to the state and federal governments in connection with seeking money through drug court grants when the court had ample funds. **Exhibits 1-2.** In the media articles, it was reported that Judge Kandrevas asserted his Fifth Amendment right more than 200 times while refusing to answer questions about court operations and how he handled money. ***Id.*** In addition to the two civil lawsuits against Judge Kandrevas, it was also reported that the U.S. Justice Department was investigating the allegations. ***Id.***

Second, as another example, only a few years prior to Green's investigation of Plaintiff, it was reported that former Wayne County Judge Mary Waterstone, a Caucasian female in Green's region, had suborned perjury. **Exhibit 3.** Waterstone was tried on four felony charges, including concealing perjured testimony. *Id.*

Green testified that she was aware of the fact that there were reports regarding the misconduct of Judges Kandrevas and Waterstone, that both judges were located in Green's administrative region, and that Green did not file grievances against either of these judges. **Exh. 4 at 97:16-98:7, 100:2-21 (Green).** With respect to the two aforementioned judges, it was reported that the JTC merely "scolded" Judge Waterstone,[1] and did not file a formal complaint against her. **Exh. 3.** Furthermore, there is no evidence that the JTC investigated Judge Kandrevas at all[2], and it did not file a formal complaint against them.

Third, Plaintiff also demonstrated that there were other judges against whom public allegations of serious misconduct were raised, but who were not pursued by the JTC. For instance, Grand Traverse County Probate Court Judge David Stowe, a white male, was reported to have a romantic relationship with a litigant (Curry) in a divorce case over which he was presiding, and he continued oversight of the custody case related to the divorce even after the two began a physical relationship. **Exhibit 6.** Judge Stowe eventually hired Curry to work for him in the family court. ***Id.*** Judge Stowe later married Curry, and later was found to be tampering

[1] Despite acknowledging that he knew about the press coverage regarding Judge Waterstone, during his deposition on the basis of privilege Fischer refused to indicate whether the JTC investigated Judge Waterstone. **Exh. 5 at 148:2-13, 152:8-14 (Fischer).**

[2] The JTC's counsel directed Fischer not to answer whether the JTC had investigated Judge Kandrevas on the basis of privilege. **Exh. 5 at 141:20-145:21 (Fischer).**

with an investigation into a domestic dispute involving him and Curry. ***Id.*** It was reported that the JTC only gave Judge Stowe "a wrist slap." ***Id.***

As a final example, Plaintiff showed that Lapeer Circuit Court Judge Byron Konschuh, a white male, pled no contest to a misdemeanor count of failing to account for county money after having been charged in 2014 with five felony counts of embezzlement following an investigation by the Michigan State Police. **Exhibit 7.** Prosecutors alleged that Judge Konschuh used funds his office received and placed them in his own personal bank account. ***Id.*** Notwithstanding the fact the JTC knew about the media reports regarding Judge Konschuh, the JTC never filed any formal complaint against him. **Exhibit 8 at 35:13-17 (Rynier as representative of the JTC); Exhibit 5 at 146:21-147:11 (Fischer).**

**Defendants Hearsay Argument is Without Merit.**

In reply to Plaintiff's response to the JTC and Fischer's dispositive motions, which responses referenced and attached the media articles at issue, Fischer and the JTC argued that the media articles are inadmissible hearsay. Docket No. 145 at 5775, 5780.

On October 22, 2018, Defendants, Fischer and the JTC, filed this Motion[3] to exclude the media articles as part of a last ditch attempt to prevent Plaintiff from

[3] This Motion also purports to seek to exclude "editorials," but Plaintiff has not sought to rely upon any "editorials."

supporting her claim that the JTC, Fischer and Green treated Plaintiff differently than similarly situated male and/or non-African American judges.

First, Defendants assertion that the media articles are inadmissible hearsay is without merit inasmuch as the articles are not offered for the truth of the Comparator Judges' misconduct, but rather as to the JTC's, Fischer's and Green's knowledge that allegations of misconduct existed. Second, even if Plaintiff seeks to offer the Comparator Judges' misconduct for the truth of such Comparator Judges' misconduct, Plaintiff will do so without introducing hearsay evidence by introducing public court documents that are exceptions to Fed. R. Evid. 802 hearsay under Fed. R. Evid. 803(8) as public records. Last, Defendants' assertion that Plaintiff should be precluded from showing that the JTC, Fischer and Green treated Plaintiff differently than similarly situated male and/or non-African American judges for the reason that Defendants are purportedly "unable to respond" because they decided to assert privileges is disingenuous and without merit.

## ARGUMENT

### I. Standard of Review.

The Federal Rules of Evidence do not explicitly authorize in limine rulings, but the practice was developed pursuant to a district court's inherent authority to manage the course of trials. *Luce v. United States*, 469 U.S. 38, 41; 105 S. Ct. 460

(1984). It is within the district court's discretion to make an in limine ruling on evidentiary matters, but there is no right to an in limine ruling. *Huddleston v. United States*, 485 U.S. 681, 688-689; 108 S. Ct. 1496 (1988).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Under Rule 401 of the Federal Rules of Evidence, relevancy is not an inherent characteristic of any item of evidence, but exists only as a relation between an item of evidence and a matter properly provable in the case. *Huddleston*, 485 U.S. at 682.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"Out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted." *Anderson v. United States*, 417 U.S. 211, 219; 94 S. Ct. 2253 (1974).

Hearsay is not admissible unless provided otherwise by a federal statute, the Federal Rules of Evidence or other rules proscribed by the Supreme Court. Fed. R. Evid. 802. "Hearsay exceptions are provided in the evidentiary rules for certain situations when it is believed that the out-of-court statement has sufficient indicia

of reliability such that the protection provided by the hearsay rule is unnecessary." *United States v. Scott*, 69 Fed. Appx. 317, 320 (6th Cir. 2003).

## II. The Media Articles are Not Hearsay.

This Court has held that "[n]ewspaper articles and television clips do not constitute hearsay to the extent they are offered for purposes other than for the truth of the matter asserted, such as to prove notice, damages, or that a controversy existed." *Park W. Galleries, Inc. v. Global Fine Art Registry, LLC*, 2010 U.S. Dist. LEXIS 22872 at *8-9 (E.D. Mich. 2010) **(Exhibit 9)**. Here, since the media articles are not being offered for the truth of any matter asserted therein (*i.e.*, whether the Comparator Judges actually committed the alleged misconduct), but rather are offered only as evidence that the media articles noted that serious allegations of misconduct existed, the media articles do not constitute hearsay at all, and therefore are admissible if relevant to Plaintiff's claims, which they are.[4]

Plaintiff alleges that the JTC, Fischer and Green treated Plaintiff differently than similarly situated male and/or non-African American judges. Among other evidence, Plaintiff has come forward with evidence of similarly situated male and/or non-African American judges who the JTC, Fischer and Green treated differently than Plaintiff. Docket No. 142 at Page ID 5027-5031; Docket No. 143

[4] Tellingly, Fischer and the JTC do not challenge the accuracy of the facts conveyed by the media articles.

at Page ID 5416-5419. Plaintiff's evidence includes, but is not limited to, various media articles which show that Defendants were or should have been aware of serious allegations of misconduct. *Id.*

For example, the media articles put the JTC on notice that two of the Comparator Judges had serious criminal felony charges brought against them,[5] which indicates that a prosecuting attorney believed there was a reasonable likelihood it could be proven beyond a reasonable doubt that the alleged crimes occurred. See, ABA Criminal Justice Standard 3-4.3.[6] Such alleged conduct should have warranted investigation by the JTC, and likely the filing of a formal complaint; however, there is no evidence of either, despite the fact that the JTC's standard for imposing discipline is far lower than the criminal standard of beyond a reasonable doubt.

The media articles regarding allegations of misconduct of the Comparator Judges is relevant because it is undisputed that the JTC could investigate judges on

---

[5] Judge Waterstone was tried on four felony charges, including concealing perjured testimony. **Exhibit 3.** Judge Byron Konschuh, a white male, pled no contest to a misdemeanor count of failing to account for county money after having been charged in 2014 with five felony counts of embezzlement following an investigation by the Michigan State Police. **Exhibit 7.**

[6] ABA Criminal Justice Standard 3-4.3(a) provides that "[a] prosecutor should seek or file criminal charges only if the prosecutor reasonably believes that the charges are supported by probable cause, that admissible evidence will be sufficient to support conviction beyond a reasonable doubt, and that the decision to charge is in the interests of justice."

its own initiative, without any grievance filed, after hearing of a story in the media. **Exh. 5 at 47:11-21, 48:7-21 (Fischer); Exh. 8 31:1-3 (Rynier)**; Mich. Ct. R. 9.207(A). Evidence adduced during discovery in this case even demonstrates that the JTC was aware of the allegations of misconduct against some of the Comparator Judges. For example, Fischer testified that he may have seen something in the newspaper regarding felony charges being filed against Judge Konschuh. **Exh. 5 at 147:10-11 (Fischer).** Green was aware that there was a civil case involving Judge Kandrevas that questioned the way he handled funds, yet no formal complaint was ever filed against him, and he was never placed on administrative leave. **Exh. 4 at 71:10-13; 72:10-22 (Green).** Green further testified that she was aware of the allegations made against Judge Waterstone that she had suborned perjury. ***Id.* at 73:7-24.** Notwithstanding Green having been aware of these allegations, she did not file any grievances with the JTC. ***Id.* at 98:6-7.**

In *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524 (6th Cir. 2007), the plaintiff, Blair, sought to offer evidence that his termination was motivated by age discrimination, specifically that defendant's vice president said Blair was "too old" for a client account Blair had been working on. Defendant argued that this statement is inadmissible hearsay. The Sixth Circuit found that Blair only offered the statement for that fact that it was said, not to prove that Blair was actually too

old to work on the account, and, accordingly this statement is not hearsay because it is not being offered for the truth of the matter asserted. *Id.*

Like the statement the plaintiff in *Blair* sought to offer, Plaintiff offers the articles to show the existence of the allegations of misconduct that the JTC was aware of or should have been aware of. Here, it is undisputed[7] that the media articles are being offered to demonstrate that the JTC was aware, or at least should have been aware, that there were serious allegations of misconduct made against the Comparator Judges. Put more simply, the media articles are being offered to simply show that they existed, not to prove the truth of any allegations made therein. As such, the media articles are not hearsay at all, and, since they are relevant to Plaintiff's claims, are admissible.

Notwithstanding the foregoing, some of the media articles contain facts which can be introduced to the jury through other evidence, even if offered for the truth of the matter asserted (*e.g.,* the facts that some of the Comparator Judges were criminally charged, and that substantial civil jury verdicts were rendered against some of the Comparator Judges), that is excepted from the hearsay rule. For example, a court document showing that Judge Konschuh pled no contest to a misdemeanor count of failing to account for county money after having been charged with five felony counts of embezzlement, would be admissible as a public

[7] Defendants do not dispute that Plaintiff offers the media articles to show that the JTC was aware of allegations of misconduct. Docket No. 156 at 6048.

record exception to the hearsay rule.[8] Fed. R. Evid. 803(8); see also, *United States v. Black Bear*, 542 F.3d 249, 256 (8th Cir. 2008) (a state court document falls under the exception to hearsay rule set forth in Fed. R. Evid. 803(8), and is also self-authenticating evidence under Fed. R. Evid. 902(4)).

## III. The Media Articles Are Not More Prejudicial Than Probative.

The thrust of Defendants' Fed. R. Evid. 403 argument is that, if the media articles are admitted, the danger of unfair prejudice purportedly outweighs their probative value because Defendants cannot dispute the assertions in the articles based on privileges Defendants themselves chose to assert during discovery. This is hardly a justification to preclude Plaintiff from introducing relevant evidence. Defendants' argument is without merit because (1) Defendants were not legally compelled to assert such privileges—rather, they did so by choice, and (2) it is well settled law that the assertion of a privilege cannot be used as both a sword and a shield.

### A. The JTC and Fischer Asserted Privileges by Choice.

During discovery, the JTC asserted the following privileges in an effort to stonewall Plaintiff's discovery requests in connection with the judges the JTC investigated: (1) state law privilege under Mich. Ct. R. 9.221, (2) the attorney-

---

[8] "[C]ourt documents are generally considered self-authenticating." *Evans v. Lucas Metro. Hous. Auth.*, 2016 U.S. Dist. LEXIS 177354, *12, 2016 WL 7407539 (N.D. Oh. 2016) **(Exhibit 10)**.

client privilege / attorney work product doctrine, and (3) deliberative process privilege. As a threshold matter, it is important to note that the only privilege here that requires a non-party in this case to waive it would have been the state law privilege set forth in Mich. Ct. R. 9.221, which this Court already ruled is inapplicable to this case. Docket No. 78 at Page ID 2058. The remaining privileges asserted by the JTC and Fischer are exclusively held by the JTC and/or Fischer, and therefore assertion of such privileges was entirely within their authority.

"[A] client may waive the [attorney client] privilege." *In re Lott*, 424 F.3d 446, 452 (6th Cir. 2005). Similarly, the protections afforded by the attorney work product doctrine may also be waived by a client. *In re Lott*, 139 Fed. Appx. 658, 660 (6th Cir. 2005). Here, since Fischer was the attorney and the JTC was the client, they had the right to either assert or waive the attorney client privilege. The JTC or Fischer would not have had to obtain permission from a non-party to waive these privileges. Similarly, since the deliberative process privilege can also be waived, the JTC, being the sole government entity holding the deliberative process privilege, could have waived that as well, but chose not to do so. See, *Bahena v. City of Chicago*, 2018 U.S. Dist. LEXIS 97852, *9 (N.D. Ill. 2018) **(Exhibit 11)**. As such, any assertion or suggestion by Defendants that they were somehow

required to assert these privileges is disingenuous, and their choice to do so cannot serve to restrict Plaintiff's right to offer relevant evidence.

**B. The JTC and Fischer Cannot Use the Voluntarily Asserted Privileges as Both a Sword and a Shield.**

After voluntarily asserting privileges which the JTC and Fischer held, as a shield precluding discovery regarding the JTC's investigation of judges, the JTC and Fischer now seek to use the voluntary assertion of such privileges as a sword to attempt to prevent Plaintiff from offering relevant and admissible evidence on the purported basis that Defendants cannot respond to such evidence. Defendants purported inability to respond is a result of a strategic litigation decision made by Defendants.

The JTC's and Fischer's decisions to invoke the aforementioned privileges prevented Plaintiff from obtaining any knowledge as to the nature, substance or even existence[9] of any purported investigations by the JTC of the Comparator Judges (or any other judge). The JTC and Fischer made a deliberate decision to invoke privileges to the greatest extent allowable by law and the rulings of this Court. The JTC and Fischer now must accept the consequences of their decision. Specifically, as stated in greater detail in Plaintiff's Motion *In Limine* to Exclude

---

[9] Because the identities of the aggrieved judges have not been revealed to Plaintiff, Plaintiff does not even know if any JTC files exist at all as to the Comparator Judges.

Evidence of the JTC's Alleged Investigation of Comparator Judges Based Upon the Invocation of Privilege to Preclude Disclosure of Such Information Pursuant to Fed. R. Evid. 403 (Docket No. 155). Thus, there is no unfairness that Defendants now cannot assert or support that they conducted investigations of the Comparator Judges because the JTC and Fischer themselves made the deliberate and conscious decision to invoke privileges that precluded discovery on that topic. Thus, Defendants Fed. R. Evid. 403 argument is without merit because there is no unfair prejudice in refusing to exclude the relevant and admissible media articles Plaintiff will introduce into evidence.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny the instant Motion.

Respectfully submitted,

/s/ Jason R. Hirsch
Mayer Morganroth (P17966)
Jeffrey B. Morganroth (P41670)
Jason R. Hirsch (P58034)
Joshua A. Fisher (P72598)
MORGANROTH & MORGANROTH, PLLC
344 North Old Woodward Avenue, Suite 200
Birmingham, MI 48009
248-864-4000

Elliot S. Hall (P14546)
344 North Old Woodward Avenue, Suite 200
Birmingham, MI 48009
248-864-4000

Attorneys for Plaintiff

Dated: November 5, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel in this matter registered with the ECF system.

Respectfully Submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/ Jason R. Hirsch
JASON R. HIRSCH (P58034)
Morganroth & Morganroth, PLLC
Email: jhirsch@morganrothlaw.com

Dated: November 5, 2018